**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. _____ |
| | ) |
| WALNER G. GACHETTE, *individually and* | ) |
| *as Trustee of The Walner G. Gachette Living* | ) |
| *Trust*; A2Z RENTALS, LLC; LBS HOME | ) |
| LOAN, INC.; MARIA GACHETTE; SCOTT | ) |
| RANDOLPH, *Orange County Tax Collector*; | ) |
| VICKIE L. POTTS, *Charlotte County Tax* | ) |
| *Collector*; JOE G. TEDDER, *Polk County* | ) |
| *Tax Collector*; LISA CULLEN, *Brevard County* | ) |
| *Tax Collector*; VENTURA COUNTRY CLUB | ) |
| HOMEOWNER'S ASS'N, INC.; SKY LAKE | ) |
| SOUTH HOMEOWNER'S ASSOCIATION, | ) |
| INC.; CHARLOTTE COUNTY, FLORIDA; | ) |
| POLK COUNTY, FLORIDA; ORANGE | ) |
| COUNTY, FLORIDA; CITY OF ORLANDO, | ) |
| FLORIDA, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

COMPLAINT

COMES NOW the United States of America, by and through its undersigned counsel,

and complains and alleges as follows:

JURISDICTION AND VENUE

1.      This civil action is commenced pursuant to Sections 7401, 7402(a) and 7403 of

the Internal Revenue Code of 1986 (title 26 of United States Code) ("IRC") at the direction of

the Attorney General of the United States and with the authorization and at the request of Chief

Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury of the United States, to obtain a judgment against Walner Gachette for unpaid, assessed federal tax liabilities; and to enforce federal tax liens against 24 residential real properties subject to the claims of the United States against Walner Gachette, whether legal title is held directly by Walner Gachette or by others.  The action is also commenced to enforce a judgment of this Court against Walner Gachette in *United States v. Walner Gachette, et al.*, Case No. 6:14-cv-01539-ACC-EJK, for the disgorgement of unjust profits by recourse to those properties.

2.      Jurisdiction over this action is vested in the Court by Sections 1340 and 1345 of title 28, United States Code, and by IRC Sections 7402 and 7403.

3.      The defendant Walner Gachette is liable to the United States for federal tax liabilities and a disgorgement judgment that the United States seeks to collect in this action.  He resides at 9741 Portofino Drive, Orlando, Florida, within this district.  In addition, all of the real property that is the subject of the lien and judgment enforcement portion of this action is located within this district.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2). The United States does not seek to enforce its liens and claims against Walner Gachette's homestead in this action at this time.

DEFENDANTS JOINED PURSUANT TO IRC § 7403

4.      The defendant Walner Gachette is the trustee of The Walner G. Gachette Living Trust, and is joined as a party in that capacity pursuant to IRC § 7403(b) as a person who may claim an interest in property that is the subject of this action.  Specifically, The Walner G. Gachette Living Trust holds bare legal title to three of the properties in this action.

5.      The defendant A2Z Rentals, LLC ("A2Z Rentals") is a Florida limited liability company and is joined as a party pursuant to IRC § 7403(b) as a person who may claim an interest in property that is the subject of this action.  Specifically, A2Z Rentals holds bare legal title to nine of the properties in this action.

6.      The defendant LBS Home Loan, Inc. ("LBS Home Loan") is a Florida corporation and is joined as a party pursuant to IRC § 7403(b) as a person who may claim an interest in property that is the subject of this action.  Specifically, LBS Home Loan holds bare legal title to nine of the properties in this action.

7.      The defendant Maria Gachette is Walner Gachette's wife and is joined as a party pursuant to IRC § 7403(b) as a person who may claim an interest in property that is the subject of this action.  Specifically, Maria Gachette holds bare legal title to two properties in this action, namely, those located at 4785 Piedmont Court and 1318 Queensway Road, both in Orlando, Florida.

8.      The defendant Scott Randolph is the Tax Collector for Orange County, Florida, and is joined as a party in his official capacity pursuant to IRC § 7403(b) as a person who may claim a lien against or interest in property that is the subject of this action.  Specifically, real property taxes may be owing on some or all of the 20 properties in this action located in Orange County, Florida.

9.      The defendant Vickie L. Potts is the Tax Collector for Charlotte County, Florida, and is joined as a party in her official capacity pursuant to IRC § 7403(b) as a person who may claim a lien against or interest in property that is the subject of this action.  Specifically, real

property taxes may be owing on the one property in this action located within Charlotte County, Florida, at 1172 Salina Avenue, Port Charlotte.

10.     The defendant Joe G. Tedder is the Tax Collector for Polk County, Florida, and is joined as a party in his official capacity pursuant to IRC § 7403(b) as a person who may claim a lien against or interest in property that is the subject of this action.  Specifically, real property taxes may be owing on one or both of the two properties in this action located within Polk County, Florida, namely, 2129 Hillcrest Road in Auburndale and 1096 Stewart Avenue in Frostproof.

11.     The defendant Lisa Cullen is the Tax Collector for Brevard County, Florida, and is joined as a party in her official capacity pursuant to IRC § 7403(b) as a person who may claim a lien against or interest in property that is the subject of this action.  Specifically, real property taxes may be owing on the property in this action located within Brevard County, Florida, at 3115 Wiley Avenue, Mims.

12.     The defendant Ventura Country Club Homeowners Association, Inc. (hereinafter "Ventura Country Club Homeowners Association"), is located at 3333 Woodgate Boulevard, Orlando, Florida, and is joined as a party pursuant to IRC § 7403(b) as a person who may claim a lien against or interest in property that is the subject of this action.  Specifically, Ventura Country Club Homeowners Association may claim a lien against the real property located at 3519 Clear Stream Drive, Orlando, Florida.

13.     The defendant Sky Lake South Homeowner's Association, Inc. (hereinafter "Sky Lake South Homeowner's Association"), is located at 6972 Lake Gloria Boulevard, Orlando, Florida, and is joined as a party pursuant to IRC § 7403(b) as a person who may claim a lien

4

against or interest in property that is the subject of this action.  Specifically, Sky Lake South

Homeowner's Association may claim a lien against the real property located at 11110 Iron

Bridge Road, Orlando, Florida.

      14.    The defendant Charlotte County, Florida is a political subdivision of the State of

Florida and is joined as a party pursuant to IRC § 7403(b) as a person who may claim a lien

against or interest in property that is the subject of this action.  Specifically, Charlotte County

may claim a utility lien against the property located at 1172 Salina Avenue in Port Charlotte,

Florida.

      15.    The defendant Polk County, Florida is a political subdivision of the State of

Florida and is joined as a party to this action pursuant to IRC § 7403(b) as a person who may

claim a lien against or interest in property that is the subject of this action.  Specifically, Polk

County may claim an administrative lien for building without a permit and a nuisance abatement

lien against the property located at 2129 Hillcrest Avenue, Auburndale, Florida.

      16.    The defendant Orange County, Florida is a political subdivision of the State of

Florida and is joined as a party to this action pursuant to IRC § 7403(b) as a person who may

claim a lien against or interest in property that is the subject of this action.  Specifically, Orange

County may claim special assessment liens for nuisance abatement against the property located

at 1318 Queensway Road, Orlando, Florida, and the property located at 14 S Apollo Drive,

Apopka, Florida.

      17.    The defendant City of Orlando is a Florida municipal corporation and is joined as

a party pursuant to IRC § 7403(b) as a person who may claim a lien against or interest in

property that is the subject of this action.  Specifically, the City of Orlando may claim special

5

assessment liens against the real property located at 2932 Willie Mays Parkway, Orlando, Florida.

GENERAL ALLEGATIONS

*Walner Gachette committed massive fraud by means of a tax return preparation business.*

18.     Walner Gachette owned, operated, and franchised a tax return preparation business that was intended to, and did, produce tens of thousands of fraudulent federal income tax returns and generated enormous profits for Gachette and his associates.  The enterprise caused millions of dollars of losses to the Federal Treasury and Gachette and his companies underpaid their own income taxes by millions of dollars.

19.     Beginning in 2007 or 2008, Walner Gachette began his tax return preparation business through a wholly-owned company, LoanBuySell, Inc., using the trade name LBS Tax Services.  He initially operated out of free conference rooms provided by auto dealerships and check cashing companies.  He opened his first office in Orlando, Florida in 2009, and eventually created five other companies through which he conducted his own tax return preparation business, and also franchised the name LBS Tax Services to others.

20.     Walner Gachette's business grew explosively to a large, sprawling enterprise.  By 2013 he owned and operated (through the six operating companies he created) 56 tax return preparation locations in Florida, Georgia, Alabama and Texas, and had agreements with at least 27 franchisees operating an additional 239 stores.  In addition to other remuneration from the franchisees, Walner Gachette or one of his companies received a fee for every tax return prepared by a franchisee.

21.     Walner Gachette's tax return preparation business was designed and implemented to maximize refunds for its customers – and fees for itself – without regard to the factual accuracy of the information included on the returns it prepared.  Marketing materials for the enterprise made false and exaggerated claims about the availability of refunds for people with children.  Training for the return preparers, which Walner Gachette organized and conducted, involved learning how to input information into the tax preparation software and memorizing scripts for "upselling" during the return preparation process; there was no training in the substance of tax law.  Preparers were required to promise a larger refund for each form utilized (and the business charged a fee for each form), regardless of the applicability of the form or the information placed on the form to a particular taxpayer's circumstances.  The companies' fees – often deceptive and unconscionable – were deducted from customers' refunds (sometimes without their knowledge of how much the fees were), so that every return had to claim a refund or else Gachette and his companies and associates would not receive a fee.

22.     The federal income tax returns prepared by LoanBuySell, Inc., and Walner G. Gachette's other companies were overwhelmingly fraudulent: an IRS investigation estimated more than 92% of the returns were inaccurate.  The returns were often manipulated to hit what the companies' training materials called the "magic" income range between $16,000 and $18,000 in order to maximize the Earned Income Tax Credit.  Common fraudulent tactics the IRS has identified on the returns include: (a) false filing status; (b) fictitious Schedule C businesses with fabricated income and expenses; (c) unwarranted education credits (d) grossly inflated federal tax withholding; and (e) bogus fuel tax credits.  The Gachette businesses also prepared

fraudulent amended returns for prior years, replacing accurate returns prepared for customers elsewhere.

*The United States shut down the return preparation business.*

23.     The IRS's investigation into Walner Gachette's tax preparation business began as a 2011 field visit by a revenue agent to review Gachette's due diligence in preparing income tax returns claiming the Earned Income Tax Credit, a refundable tax credit intended for certain low-income taxpayers that can produce a refund even when no tax is owed or paid.  Gachette denied that he was a return preparer and refused to meet with the agent.

24.     The IRS in its investigation documented massive fraud.  The IRS estimates that the loss to the Treasury caused by fraudulent returns prepared by the stores owned by Gachette in 2013 alone (that is, excluding returns for other years and excluding returns prepared by the numerous franchisees) is over $7.5 million.

25.     In September 2014, the United States filed its complaint in *United States v. Walner Gachette, et al.*, Case No. 6:14-cv-1539 (M.D. Fla.), and in November 2016 obtained a consensual permanent injunction against Walner Gachette and his companies, resulting in the cessation of the tax return preparation business, as well as an award requiring Walner Gachette to disgorge $5 million in illicit profits to the United States as an equitable monetary remedy. Gachette still owes more than $4.1 million of this award, which the United States seeks to collect in part in this action.  In other civil actions, the United States obtained numerous injunctions and disgorgement awards against other individuals and companies associated with Gachette's fraudulent tax return preparation enterprise.

26.     As discussed in more detail later in this complaint, the IRS assessed a penalty in the amount of $84,000 against Walner Gachette pursuant to IRC § 6701, for aiding in the preparation of 84 false tax returns.  The United States is seeking to collect this penalty in this action.

*Walner Gachette failed to report his own personal income tax accurately.*

27.     Walner Gachette failed to report his federal income tax liabilities for 2010, 2011, 2012, and 2014 accurately.  The IRS audited Walner Gachette's personal federal income tax returns for the years 2010 through 2014, resulting in tax deficiencies in excess of $680,000 (plus interest and penalties).  The IRS also audited the corporate income tax returns of LoanBuySell, Inc., resulting in more than $2 million in deficiencies (plus interest and penalties).  The IRS assessed additional income taxes against Gachette for 2010 and 2011, which have been paid.  As discussed in more detail later in this complaint, the IRS also assessed additional income taxes against Gachette for 2012 and 2014, which have not been paid, and he has also not paid the taxes he reported on his 2013 federal income tax return.

28.     In March 2015, the United States commenced a criminal case against Walner G. Gachette, *United States v. Walner G. Gachette*, Case No. 6:15-cr-00062 (M.D. Fla.), in which Gachette pleaded guilty to two felonies, namely, filing false and fraudulent personal income tax returns for himself for the years 2010 and 2011.  He received a sentence of two years of probation and was required to pay restitution to the United States in the amount of $402,325, which has been paid.

29.     The United States is seeking in this action to collect Walner Gachette's federal income tax liabilities for the years 2012 through 2014, as well as for 2017 and 2018, which he has failed to pay.

*Walner G. Gachette used the profits of his tax return preparation business as initial capital for a real estate portfolio.*

30.     The profits from the fraudulent tax return business allowed Walner Gachette to live luxuriously.  He resided in a house valued at more than $1 million until the United States sold the property in 2018.  He drives luxury automobiles (currently a Range Rover, but in the recent past a Rolls Royce, a Lamborghini, and a Ferrari, among others).  He also vacations internationally five or six times a year.

31.     Walner Gachette has maintained a realtor license since 2001 and is a licensed real estate broker.  He tried to break into the real estate industry in the early 2000s, but that effort was rendered unsuccessful by the housing market collapse in 2007 and 2008.

32.     In 2012, with housing prices low and flush with profits from his fraudulent tax return preparation business, Walner Gachette began what today is his primary business activity: buying, rehabilitating, renting, and selling residential rental properties.

33.     Walner Gachette created the defendant LBS Home Loan in 2012 to purchase properties for his own portfolio, and also to lend money to, and takes mortgages from, other individuals working in his tax return preparation business so they could purchase properties. Walner Gachette has purchased and sold numerous residential rental properties through LBS Home Loan since 2012.

34.     Walner Gachette created the defendant A2Z Rentals in 2014, and uses this company both to acquire (and sell) residential rental properties for his portfolio, and to conduct other business activities such as a car rental business.

35.     Walner Gachette purchased residential rental properties, placing title in the name of his wife Maria Gachette, and also purchased other residential rental properties in his own name, then transferred title to those properties to a purported trust.

36.     Walner Gachette, directly or indirectly, controls and is the beneficial owner of at least 32 residential properties, but the United States in this action seeks to enforce its federal tax liens lien and disgorgement judgment against only 24 of those properties.  Those 24 properties are described in detail later in this complaint, but for ease of reference are set forth in the following chart:

| Number | Title Holder | Address | County | Date of Acquisition by Walner Gachette or His Nominee | Paragraph in Complaint with Legal Description |
|---|---|---|---|---|---|
| 1 | Walner Gachette | 2932 Willie Mays Parkway, Orlando | Orange | January 7, 2015 | 39 |
| 2 | Walner G. Gachette Living Trust | 14404 Hertha Avenue, Orlando | Orange | June 28, 2015 | 40 |
| 3 | Walner G. Gachette Living Trust | 4646 Zorita Street, Orlando | Orange | June 28, 2015 | 41 |
| 4 | Walner G. Gachette Living Trust | 5804 Laconia Road, Orlando | Orange | November 5, 2015 | 42 |
| 5 | A2Z Rentals, LLC | 14 S Apollo Drive, Apopka | Orange | June 12, 2015 | 43 |
| 6 | A2Z Rentals, LLC | 332 Apopka Hills Circle, Apopka | Orange | November 13, 2014 | 44 |

| 7 | A2Z Rentals, LLC | 5251 Clarion Hammock Drive, Orlando | Orange | April 29, 2014 | 45 |
|---|---|---|---|---|---|
| 8 | A2Z Rentals, LLC | 2081 San Jose Boulevard, Orlando | Orange | June 29, 2015 | 46 |
| 9 | A2Z Rentals, LLC | 10125 Donhill Court, Orlando | Orange | August 3, 2014 | 47 |
| 10 | A2Z Rentals, LLC | 3519 Clear Stream Drive, Orlando | Orange | October 1, 2014 | 48 |
| 11 | A2Z Rentals, LLC | 2132 Rouse Lake Road, Orlando | Orange | February 18, 2014 | 49 |
| 12 | A2Z Rentals, LLC | 705 Spring Creek Drive, Ocoee | Orange | January 27, 2017 | 50 |
| 13 | A2Z Rentals, LLC | 1172 Salina Avenue, Port Charlotte | Charlotte | June 23, 2017 | 51 |
| 14 | LBS Home Loan, Inc. | 1413 Pine Lake Road, Orlando | Orange | April 4, 2019 | 52 |
| 15 | LBS Home Loan, Inc. | 11110 Iron Bridge Road, Orlando | Orange | March 22, 2012 | 53 |
| 16 | LBS Home Loan, Inc. | 9817 Carmel Park Drive, Orlando | Orange | June 11, 2012 | 54 |
| 17 | LBS Home Loan, Inc. | 2437 Stone Cross Circle, Orlando | Orange | April 3, 2014 | 55 |
| 18 | LBS Home Loan, Inc. | 7954 Soft Pine Circle, Orlando | Orange | February 3, 2014 | 56 |
| 19 | LBS Home Loan, Inc. | 2182 Patterson Avenue, Orlando | Orange | June 12, 2018 | 57 |
| 20 | LBS Home Loan, Inc. | 2129 Hillcrest Road, Auburndale | Polk | August 11, 2017 | 58 |
| 21 | LBS Home Loan, Inc. | 1096 Stewart Avenue, Frostproof | Polk | August 15, 2017 | 59 |
| 22 | LBS Home Loan, Inc. | 3115 Wiley Avenue, Mims | Brevard | March 29, 2019 | 60 |
| 23 | Maria Gachette | 4785 Piedmont Court, Orlando | Orange | May 7, 2015 | 61 |
| 24 | Maria Gachette | 1318 Queensway Road, Orlando | Orange | November 3, 2015 | 62 |

37.     In addition to the properties listed above, Walner Gachette and entities he controls have sold at least 44 residential rental properties since 2014.

## PROPERTIES TO BE SOLD IN THIS ACTION

*Walner Gachette*

38.     Walner Gachette holds legal title to only one of the properties in this action, namely, the real property located at 2932 Willie Mays Parkway, Orlando, Florida ("2932 Willie Mays Parkway") by virtue of a quitclaim deed dated January 18, 2019.  2932 Willie Mays Parkway is more particularly described as follows:

> Lot 92, Richmond Estates, Unit 3, recorded in Plat Book 3, Pages
> 97 & 98 of the Public Records of Orange County, Florida
>
> Parcel No. 05-23-29-7399-00920

Walner Gachette's wife Maria Gachette acquired legal title to 2932 Willie Mays Parkway by virtue of a certificate of title dated January 1, 2015, but Walner Gachette provided all the funds to make that purchase.  Maria Gachette transferred 2932 Willie Mays Parkway to Walner Gachette for no consideration on or about January 18, 2019, after the tenant in the property failed to pay the rent, but Walner Gachette did not record the deed until September 19, 2019.  2932 Willie Mays Parkway is subject to Special Assessment Liens (recorded as Document Nos. 20180504535 and 20180611814 in the Orange County real property records) in favor of the City of Orlando and may be subject to real property tax liabilities owed to Orange County, Florida.

*The Walner G. Gachette Living Trust*

39.     The Walner G. Gachette Living Trust holds legal title to real property located at 14404 Hertha Avenue, Orlando, Florida ("14404 Hertha Avenue"), more particularly described as follows:

> Lot 21, Block B, Bonneville Section 1, according to the Plat
> thereof, recorded in Plat Book W, Page 90 of the Public Records of
> Orange County, Florida
>
> Parcel No. 11-22-31-0784-02210

Walner Gachette obtained title to 14404 Hertha Avenue by warranty deed dated June 28, 2015, and transferred title to the property to The Walner G. Gachette Living Trust for no consideration by warranty deed dated August 31, 2018.  14404 Hertha Avenue may be subject to real property tax liabilities owed to Orange County, Florida.

40.     The Walner G. Gachette Living Trust holds legal title to real property located at 4646 Zorita Street, Orlando, Florida ("4646 Zorita Street"), more particularly described as follows:

> Lot 165, Richmond Estates Unit 3, recorded in Plat Book 3, Pages
> 97 & 98 of the Public Records of Orange County, Florida
>
> Parcel No. 05-23-29-7399-01650

Walner Gachette obtained title to 4646 Zorita Street by quitclaim deed dated June 28, 2015, and transferred title to the property to The Walner G. Gachette Living Trust for no consideration by warranty deed dated August 31, 2018.  4646 Zorita Street may be subject to real property tax liabilities owed to Orange County, Florida.

41.     The Walner Gachette Living Trust holds legal title to real property located at

5804 Laconia Road, Orlando, Florida ("5804 Laconia Road"), more particularly described as

follows:

> Lot 4, Block M, Robinswood Section Five, according to the Plat
> thereof recorded at Plat Book W, Page 62, in the Public Records of
> Orange County, Florida
>
> Parcel No. 13-22-28-7568-13040

Walner Gachette obtained title to 5804 Laconia Road by quitclaim deed dated November 5,

2015, and transferred title to the property to The Walner G. Gachette Living Trust for no

consideration by warranty deed dated August 31, 2018.  5804 Laconia Road may be subject to

real property tax liabilities owed to Orange County, Florida.

*A2Z Rentals, LLC*

42.     A2Z Rentals holds legal title to real property located at 14 S Apollo Drive,

Apopka, Florida ("14 S Apollo Drive") by virtue of a warranty deed dated June 12, 2015.  14 S

Apollo Drive is more particularly described as follows:

> Lot 36, Block E, Wekiva Manor, Sector 2, according to the Plat
> thereof recorded in Plat Book X Page 75, of the Public Records of
> Orange County, Florida
>
> Parcel No. 12-21-28-9118-05360

14 S Apollo Drive is subject to a Special Assessment Lien (recorded as Document No.

20180288457 in the Orange County real property records) in favor of Orange County, Florida.

14 S Apollo Drive may also be subject to real property tax liabilities owed to Orange County,

Florida.

43.     A2Z Rentals holds legal title to real property located at 332 Apopka Hills Circle, Apopka, Florida ("332 Apopka Hills Circle") by virtue of a certificate of title dated November 13, 2014.  332 Apopka Hills Circle is more particularly described as follows:

> Lot 23, West Apopka Hills, according to the Plat thereof recorded
> in Plat Book 26, Pages 78 and 79, of the Public Records of Orange
> County, Florida
>
> Parcel No. 16-21-28-9141-00230

332 Apopka Hills Circle may be subject to real property tax liabilities owed to Orange County, Florida.

44.     A2Z Rentals holds legal title to real property located at 5251 Clarion Hammock Drive, Orlando, Florida ("5251 Clarion Hammock Drive") by virtue of a certificate of title dated April 29, 2014.  5251 Clarion Hammock Drive is more particularly described as follows:

> Lot 69, Clarion Oaks, according to the Plat thereof recorded in Plat
> Book 25, Pages 123 and 124 of the Public Records of Orange
> County, Florida
>
> Parcel No. 06-22-29-1351-00690

5251 Clarion Hammock Drive may be subject to real property tax liabilities owed to Orange County, Florida.

45.     A2Z Rentals holds legal title to real property located at 2081 San Jose Boulevard, Orlando, Florida ("2081 San Jose Boulevard") by virtue of a certificate of title dated June 29, 2015.  2081 San Jose Boulevard is more particularly described as follows:

> Lot 39, San Jose Shores, according to the Plat thereof recorded in
> Plat Book 4, Page 97, of the Public Records of Orange County,
> Florida
>
> Parcel No. 17-22-29-7802-00390

16

2081 San Jose Boulevard may be subject to real property tax liabilities owed to Orange County, Florida.

46.      A2Z Rentals holds legal title to real property located at 10125 Donhill Court, Orlando, Florida ("10125 Donhill Court") by virtue of a certificate of title dated August 3, 2014. 10125 Donhill Court is more particularly described as follows:

> Lot 83, Lime Tree Village, Replat of Orangewood Plat of Shadow Wood Unit 1, according to the Plat thereof recorded in Plat Book 7, Pages 72, 73 and 74, as recorded in the Public Records of Orange County, Florida
>
> Parcel No. 07-24-29-5085-00830

10125 Donhill Court may be subject to real property tax liabilities owed to Orange County, Florida.

47.      A2Z Rentals holds legal title to real property located at 3519 Clear Stream Drive, Orlando, Florida ("3519 Clear Stream Drive") by virtue of a certificate of title dated October 1, 2014.  3519 Clear Stream Drive is more particularly described as follows:

> Lot 9, Ventura Reserve, Phase 3, according to the Plat thereof, recorded in Plat Book 32, Pages 109, 110, and 111, of the Public Records of Orange County, Florida
>
> Parcel No. 10-23-30-8926-00090

3519 Clear Stream Drive is subject to a Claim of Lien (recorded as Document No. 20150085912 in the Orange County real property records) in favor of Ventura Country Club Homeowners Association, and may be subject to real property tax liabilities owed to Orange County, Florida.

48.     A2Z Rentals holds legal title to real property located at 2132 Rouse Lake Road, Orlando, Florida ("2132 Rouse Lake Road") by virtue of a certificate of title dated February 18, 2014.  2132 Rouse Lake Road is more particularly described as follows:

> The West 75 Feet of the South 107.80 Feet of the North 872.80
> Feet of the East ¼ of the Northwest ¼ of the Southeast ¼ of
> Section 16, Township 22 South, Range 31 East, Public Records of
> Orange County, Florida
>
> Parcel No. 16-22-31-0000-00106

2132 Rouse Lake Road may be subject to real property tax liabilities owed to Orange County, Florida.

49.     A2Z Rentals holds legal title to real property located at 705 Spring Creek Drive, Ocoee, Florida ("705 Spring Creek Drive") by virtue of a quitclaim deed dated January 27, 2017. 705 Spring Creek Drive is more particularly described as follows:

> Lot 61, Twin Lakes Manor, according to the Plat thereof recorded
> in Plat Book 4, Page 107, of the Public Records of Orange County,
> Florida
>
> Parcel No. 08-22-28-8810-00610

705 Spring Creek Drive may be subject to real property tax liabilities owed to Orange County, Florida.

50.     A2Z Rentals holds legal title to real property located at 1172 Salina Avenue, Port Charlotte, Florida ("1172 Salina Avenue") by virtue of a warranty deed dated June 23, 2017. 1172 Salina Avenue is more particularly described as follows:

> Lot 4, Block 195, Port Charlotte Subdivision Section 8, according
> to the Plat thereof recorded in Plat Book 4, Pages 16A through
> 16Z7, of the Public Records of Charlotte County, Florida

Parcel No. 402220310009

1172 Salina Avenue is subject to a water utility lien (recorded as Instrument No. 2572031 in the

Charlotte County real property records) in favor of Charlotte County, Florida, and may be

subject to real property tax liabilities owed to Charlotte County, Florida.

*LBS Home Loan, Inc.*

51.     LBS Home Loan holds legal title to real property located at 1413 Pine Lake Road,

Orlando, Florida ("1413 Pine Lake Road") by virtue of a warranty deed dated April 4, 2019.

1413 Pine Lake Road is more particularly described as follows:

>       Lot 15, Block D, of Evans Village Fifth Unit, according to the Plat
>       thereof recorded in Plat Book 2, Page 72, of the Public Records of
>       Orange County, Florida
>
>       Parcel No. 18-22-29-2537-14150

1413 Pine Lake Road may be subject to real property tax liabilities owed to Orange County,

Florida.

52.     LBS Home Loan holds legal title to real property located at 11110 Iron Bridge

Road, Orlando, Florida ("11110 Iron Bridge Road") by virtue of a warranty deed dated March

22, 2012.  11110 Iron Bridge Road is more particularly described as follows:

>       Lot 598, Sky Lake South Unit 4B, according to the Plat thereof
>       recorded in Plat Book 8, Page 82, of the Public records of Orange
>       County, Florida
>
>       Parcel No. 16-24-29-8120-05980

11110 Iron Bridge Road is subject to a Claim of Lien (recorded as Document No. 20200307735

in the Orange County real property records) in favor of Sky Lake South Homeowner's

Association and may be subject to real property tax liabilities owed to Orange County, Florida.

53.     LBS Home Loan holds legal title to real property located at 9817 Carmel Park Drive, Orlando, Florida ("9817 Carmel Park Drive") by virtue of a certificate of title dated June 11, 2012.  9817 Carmel Park Drive is more particularly described as flows:

> Lot 21B, of Carmel Park, according to the Plat thereof recorded in Plat Book 15, Page 92, of the Public Records of Orange County, Florida
>
> Parcel No. 18-22-31-1200-00215

9817 Carmel Park Drive may be subject to real property tax liabilities owed to Orange County, Florida.

54.     LBS Home Loan holds legal title to real property located at 2437 Stone Cross Circle, Orlando, Florida ("2437 Stone Cross Circle") by virtue of a certificate of title dated April 3, 2014.  2437 Stone Cross Circle is more particularly described as follows:

> Lot 28, Block 2, Stoneybrook Unit 1, according to the Plat thereof recorded in Plat Book 37, Pages 140 through 146, of the Public Records of Orange County, Florida
>
> Parcel No. 02-23-31-1980-20280

2437 Stone Cross Circle may be subject to real property tax liabilities owed to Orange County, Florida.

55.     LBS Home Loan holds legal title to real property located at 7954 Soft Pine Circle, Orlando, Florida ("7954 Soft Pine Circle") by virtue of a certificate of title dated February 3, 2014.  7954 Soft Pine Circle is more particularly described as follows:

> Lot 22, of the Pines Unit 1, according to the Plat thereof recorded in Plat Book 22, Page 67, of the Public Records of Orange County, Florida
>
> Parcel No. 23-22-30-8611-00220

7954 Soft Pine Circle may be subject to real property tax liabilities owed to Orange County,

Florida.

      56.    LBS Home Loan holds legal title to real property located at 2182 Patterson

Avenue, Orlando, Florida ("2182 Patterson Avenue") by virtue of a certificate of title dated June

12, 2018.  2182 Patterson Avenue is more particularly described as follows:

> Lot 7, Block 8, Richmond Heights, Unit #2, according to the Plat
> thereof recorded in Plat Book Y, Page 30, of the Public Records of
> Orange County, Florida
>
> Parcel No. 05-23-29-7403-08070

2182 Patterson Avenue may be subject to real property tax liabilities owed to Orange County,

Florida.

      57.    LBS Home Loan holds legal title to real property located at 2129 Hillcrest Road,

Auburndale, Florida ("2129 Hillcrest Road") by virtue of a quitclaim deed dated August 11,

2017.  2129 Hillcrest Road is more particularly described as follows:

> Lot 15, North 125 Feet, Hillcrest Subdivision, according to the Plat
> thereof recorded in Plat Book 25, Page 2, of the Public Records of
> Polk County, Florida
>
> Parcel No. 25-28-16-346000-000151

2129 Hillcrest Road is subject to an Administrative Lien (recorded as Instrument No.

2018086755 in the Polk County real property records) in favor of Polk County, Florida, and may

be subject to real property tax liabilities owed to Polk County, Florida.

58.     LBS Home Loan holds legal title to real property located at 1096 Stewart Avenue, Frostproof, Florida ("1096 Stewart Avenue") by virtue of a quitclaim deed dated August 15, 2017.  1096 Stewart Avenue is more particularly described as follows:

> Lot 1, Stewart-Short Subdivision, Unit No. 1, according to the Plat thereof recorded in Plat Book 63, Page 33, of the Public Records of Polk County, Florida
>
> Parcel No. 28-32-04-982410-000010

1096 Stewart Avenue may be subject to real property tax liabilities owed to Polk County, Florida.

59.     LBS Home Loan holds legal title to real property located at 3115 Wiley Avenue, Mims, Florida ("3115 Wiley Avenue") by virtue of a warranty deed dated March 29, 2019.  3115 Wiley Avenue is more particularly described as follows:

> Beginning 175 feet West from the Northeast corner of the Northwest ¼ of the Northwest ¼ of Section 17, Township 21 South, Range 35 East, Brevard County, Florida, run thence South 110 feet; thence run West 80.00 feet; thence run North 110 feet; thence run East 80.00 feet, to the Point of Beginning, excepting therefrom the North 10 feet thereof for Street right-of-way purposes
>
> Parcel No. 21-35-17-00-281.1

3115 Wiley Avenue may be subject to real property tax liabilities owed to Orange County, Florida.

*Maria Gachette*

60.     Maria Gachette holds legal title to real property located at 4785 Piedmont Court, Orlando, Florida ("4785 Piedmont Court") by virtue of a certificate of title dated May 7, 2015.

Walner Gachette furnished all the funds to make that purchase.  4785 Piedmont Court is more particularly described as follows:

> Lot 21, Malibu Groves-Eleventh Addition, according to the Plat thereof recorded in Plat Book 4, Pages 87 and 88, of the Public Records of Orange County, Florida
>
> Parcel No. 32-22-29-1828-00210

4785 Piedmont Court may be subject to real property tax liabilities owed to Orange County, Florida.

61.     Maria Gachette holds legal title to real property located at 1318 Queensway Road, Orlando, Florida ("1318 Queensway Road") by virtue of a certificate of title dated November 3, 2015.  Walner Gachette furnished all the funds to make that purchase.  1318 Queensway Road is more particularly described as follows:

> Lot 23, Block I, Parkway Estates, according to the Plat thereof recorded in Plat Book U, Page 2, of the Public Records of Orange County, Florida
>
> Parcel No. 19-22-29-6712-09230

1318 Queensway Road is subject to a Special Assessment Lien (recorded as Document No. 20170686638 in the Orange County real property records) in favor of Orange County, Florida, and may be subject to real property tax liabilities owed to Orange County, Florida.

<u>COUNT 1</u>

JUDGMENT FOR TAX LIABILITIES

62.     Walner Gachette engaged in the fraudulent business activities described in paragraphs 18 through 22, above, and failed to report his federal income tax liabilities for 2012 and 2014 accurately.  He did not file a federal income tax return for 2014, and his failure to do so

was fraudulent, *i.e.*, with the intent to defraud the United States, as shown by the pattern of his fraudulent conduct.  Walner Gachette has failed to pay the income taxes he reported for the years 2017 and 2018.

63.     A delegate of the Secretary of the Treasury made assessments against Walner Gachette for income tax liabilities for the period ending December 31, 2012, on the dates and in the amounts set forth in the following chart:

| Period | Date of Assessment | Amount of Assessment | Nature of Assessment |
|--------|--------------------|-----------------------|-----------------------|
| Income Tax December 31, 2012 | November 17, 2014 | $70,441 | Tax reported on return |
| Income Tax December 31, 2012 | November 17, 2014 | $1,254 | Penalty for failure to pay estimated tax |
| Income Tax December 31, 2012 | April 18, 2016 | $40 | Collection fees |
| Income Tax December 31, 2012 | July 4, 2016 | $161,195 | Additional tax after examination |
| Income Tax December 31, 2012 | July 4, 2016 | $32,239 | Accuracy related penalty, IRC § 6662 |
| Income Tax December 31, 2012 | July 4, 2016 | $17,411.36 | Interest accrued to date of assessment |
| Income Tax December 31, 2012 | October 15, 2018 | $17,736.06 | Penalty for late payment |
| Income Tax December 31, 2012 | November 12, 2018 | $689.03 | Penalty for late payment |
| Income Tax December 31, 2012 | November 12, 2018 | $9,310.97 | Interest accrued to date of assessment |

By virtue of the assessments set forth in this paragraph, and after application of various credits and payments and the calculation of statutory additions to the liabilities, and after the failure of the defendant Walner Gachette to pay the liabilities after proper notice and demand, there remains due and owing from the defendant Walner Gachette to the United States for 2012 federal

24

income tax liabilities the sum of $2,831.34, as of May 22, 2020, plus interest and statutory additions from that date as provided by law.

64.     A delegate of the Secretary of the Treasury made assessments against Walner Gachette for income tax liabilities for the period ending December 31, 2013, on the dates and in the amounts as set forth in the following chart:

| Period | Date of Assessment | Amount of Assessment | Nature of Assessment |
|---|---|---|---|
| Income Tax December 31, 2013 | November 23, 2015 | $634,869 | Tax reported on return |
| Income Tax December 31, 2013 | November 23, 2015 | $1,535.29 | Penalty for failure to pay estimated tax |
| Income Tax December 31, 2013 | November 23, 2015 | $142,724.92 | Penalty for late filing |
| Income Tax December 31, 2013 | November 23, 2015 | $63,433.30 | Penalty for late payment |
| Income Tax December 31, 2013 | November 23, 2015 | $36,171.98 | Interest accrued to date of assessment |

By virtue of the assessments set forth in this paragraph, and after application of various credits and payments and the calculation of statutory additions to the liabilities, and after the failure of the defendant Walner Gachette to pay the liabilities after proper notice and demand, there remains due and owing from the defendant Walner Gachette to the United States for 2013 federal income tax liabilities the sum of $1,165,323.87, as of May 22, 2020, plus interest and statutory additions from that date as provided by law.

65.     A delegate of the Secretary of the Treasury made assessments against Walner Gachette for income tax liabilities for the period ending December 31, 2014, on the dates and in the amounts as set forth in the following chart:

25

| Period | Date of Assessment | Amount of Assessment | Nature of Assessment |
|---|---|---|---|
| Income Tax December 31, 2014 | July 11, 2016 | $195,422 | Tax as determined by IRS in the absence of a return |
| Income Tax December 31, 2014 | July 11, 2016 | $121,965.30 | Penalty for fraudulent failure to file return, IRC § 6651(f) |
| Income Tax December 31, 2014 | July 11, 2016 | $12,617.10 | Penalty for late payment |
| Income Tax December 31, 2014 | July 11, 2016 | $9,940.40 | Interest accrued to assessment date |

By virtue of the assessments set forth in this paragraph, and after application of various credits and payments and the calculation of statutory additions to the liabilities, and after the failure of the defendant Walner Gachette to pay the liabilities after proper notice and demand, there remains due and owing from the defendant Walner Gachette to the United States for 2014 federal income tax liabilities the sum of $404,216.69, as of May 22, 2020, plus interest and statutory additions from that date as provided by law.

66.    A delegate of the Secretary of the Treasury made assessments against Walner Gachette for income tax liabilities for the period ending December 31, 2017, on the dates and in the amounts as set forth in the following chart:

| Period | Date of Assessment | Amount of Assessment | Nature of Assessment |
|---|---|---|---|
| Income Tax December 31, 2017 | November 5, 2018 | $24,231 | Tax reported on return |
| Income Tax December 31, 2017 | November 5, 2018 | $310.09 | Penalty for failure to pay estimated tax |
| Income Tax December 31, 2017 | November 5, 2018 | $728.08 | Penalty for late payment |
| Income Tax December 31, 2017 | November 5, 2018 | $596.91 | Interest accrued to date of assessment |

| Income Tax December 31, 2017 | June 25, 2018 | $155.42 | Fee for dishonored payment |
| Income Tax December 31, 2017 | October 7, 2019 | $20 | Collection fee |

By virtue of the assessments set forth in this paragraph, and after application of various credits and payments and the calculation of statutory additions to the liabilities, and after the failure of the defendant Walner Gachette to pay the liabilities after proper notice and demand, there remains due and owing from the defendant Walner Gachette to the United States for 2017 federal income tax liabilities the sum of $22,588.04, as of May 22, 2020, plus interest and statutory additions from that date as provided by law.

67.    A delegate of the Secretary of the Treasury made assessments against Walner Gachette for income tax liabilities for the period ending December 31, 2017, on the dates and in the amounts as set forth in the following chart:

| Period | Date of Assessment | Amount of Assessment | Nature of Assessment |
|---|---|---|---|
| Income Tax December 31, 2018 | September 23, 2019 | $11,102 | Tax reported on return |
| Income Tax December 31, 2018 | September 23, 2019 | $360 | Penalty for failure to pay estimated tax |
| Income Tax December 31, 2018 | September 23, 2019 | $333.06 | Penalty for late payment |
| Income Tax December 31, 2018 | September 23, 2019 | $271.21 | Interest accrued to date of assessment |

By virtue of the assessments set forth in this paragraph, and after application of various credits and payments and the calculation of statutory additions to the liabilities, and after the failure of the defendant Walner Gachette to pay the liabilities after proper notice and demand, there remains due and owing from the defendant Walner Gachette to the United States for 2018 federal

27

income tax liabilities the sum of $159.60, as of May 22, 2020, plus interest and statutory additions from that date as provided by law.

68.     A delegate of the Secretary of the Treasury made assessments against Walner Gachette relating to a penalty pursuant to IRC § 6701 for aiding and abetting the understatement of tax liabilities for the period ending December 31, 2012, on the dates and in the amounts as set forth in the following chart:

| Period | Date of Assessment | Amount of Assessment | Nature of Assessment |
| --- | --- | --- | --- |
| IRC § 6701 Penalty December 31, 2012 | May 8, 2017 | $84,000 | Penalty for aiding and abetting understatement of tax, IRC § 6701 |
| IRC § 6701 Penalty December 31, 2012 | July 10, 2017 | $20 | Collection fee |

By virtue of the assessments set forth in this paragraph, and after application of various credits and payments and the calculation of statutory additions to the liabilities, and after the failure of the defendant Walner Gachette to pay the liabilities after proper notice and demand, there remains due and owing from the defendant Walner Gachette to the United States for 2012 IRC § 6701 penalty the sum of $97,426.25, as of May 22, 2020, plus interest and statutory additions from that date as provided by law.

WHEREFORE, the United States asks for judgment on Count 1 in its favor and against Walner Gachette in the amount of $1,692,540.79 for income tax liabilities for the tax years 2012, 2013, 2014, 2017, and 2018, and for a penalty pursuant to IRC § 6701 for the tax period 2012, plus interest and other statutory additions accruing after May 22, 2020.

## COUNT 2

### ENFORCEMENT OF FEDERAL TAX LIENS
### AGAINST PROPERTY TITLED TO WALNER G. GACHETTE

69.     Pursuant to IRC §§ 6321 and 6322, liens for unpaid federal taxes in favor of the United States have arisen against all property and rights to property of the defendant Walner Gachette as of the dates and in the amounts of each of the assessments described in paragraphs 63 through 68, above.

70.     Notices of Federal Tax Liens were properly recorded in the real property records of Orange County, Florida, as follows:

| Serial Number | Name | Type of Tax and Periods | Assessment Dates | Amount* | Recording Date |
|---|---|---|---|---|---|
| 204463016 | Walner Gachette | Form 1040 2012 & 2013 | 11/17/14 & 11/23/15 | $878,469.86 | 3/29/16 |
| 223588816 | Walner Gachette | Form 1040 2010, 2011, 2012 & 2014 | 7/4/16 & 7/11/16 | $865,008.55 | 8/11/16 |
| 265590617 | Walner Gachette | IRC § 6701 Penalty 2012 | 5/8/17 | $84,000 | 6/19/17 |
| 3791539919 | Walner G. Gachette | Form 1040 2017 | 11/5/18 | $18,021.50 | 9/17/19 |
| 386496319 | Walner G. Gachette | Form 1040 2018 | 9/23/19 | $12,066.27 | 10/23/19 |

*The amount of the lien does not include unassessed accruals.

71.     Walner Gachette's interest in 2932 Willie Mays Parkway is subject to the federal tax liens identified in paragraph 69, above, and the property is therefore subject to judicial sale in this action pursuant to IRC § 7403.

WHEREFORE, the United States asks for judgment on Count 2 in its favor as follows:

a.   Determining that 2932 Willie Mays Parkway is subject to federal tax liens for Walner Gachette's federal tax liabilities;

b.   Decreeing that 2932 Willie Mays Parkway shall be sold free and clear of any right, claim or interest of all parties to this action; and

c.   Determining the relative priority of the parties' various rights, claims or interests to 2932 Willie May Parkway; and

d.   Decreeing the distribution of the net sale proceeds accordingly, with any amounts that would otherwise be distributed to Walner Gachette instead distributed to the United States.

<u>COUNT 3</u>

ENFORCEMENT OF FEDERAL TAX LIENS
AGAINST PROPERTY TITLED TO THE WALNER G. GACHETTE LIVING TRUST

72.   Pursuant to IRC §§ 6321 and 6322, liens for unpaid federal taxes in favor of the United States have arisen against all property and rights to property of the defendant Walner Gachette as of the dates and in the amounts of each of the assessments described in paragraphs 63 through 68, above.

73.   Notices of Federal Tax Liens were properly recorded in the real property records of Orange County, Florida, as set forth in paragraph 70, above.

74.   Walner Gachette created The Walner G. Gachette Living Trust in August 2018.

75.   The Walner G. Gachette Living Trust acquired title to 14404 Hertha Avenue, 4646 Zorita Street, and 5804 Laconia Road by operation of a single deed dated August 31, 2018, executed by Walner Gachette as the grantor.  The properties were conveyed subject to federal tax

30

liens for which notice had been recorded beforehand as set forth in paragraph 70, above, namely, liens for Walner Gachette's outstanding liabilities for 2012, 2013, and 2014 income tax, and for the IRC § 6701 penalty.

76.     The Walner G. Gachette Living Trust does not identify a beneficiary, or the beneficiary of The Walner G. Gachette Living is the same person as the trustee, namely, Walner GGachette.  The Walner G. Gachette Living Trust is not a valid trust pursuant to F.S.A.§ 736.0404(1)(c) and (e), and its assets are subject to the creditors of its settlor, Walner Gachette.

77.     The Walner G. Gachette Living Trust is a revocable trust.  Pursuant to F.S.A. § 736.0505(1)(a), its assets are subject to the creditors of its settlor, Walner Gachette.

78.     Walner Gachette's interests in 14404 Hertha Avenue, 4646 Zorita Street, and 5804 Laconia Road are subject to the federal tax liens identified in paragraph 72, above, and the properties are therefore subject to judicial sale in this action pursuant to IRC § 7403.

WHEREFORE, the United States asks for judgment on Count 3 in its favor as follows:

a.  Determining that 14404 Hertha Avenue, 4646 Zorita Street, and 5804 Laconia Road are subject to federal tax liens for Walner Gachette's federal tax liabilities;

b.  Decreeing that these three properties shall be sold free and clear of any right, claim or interest of all parties to this action;

c.  Determining the relative priority of the parties' various rights, claims and interests to these three properties; and

d.  Decreeing the distribution of the net sale proceeds accordingly, with any amounts that would otherwise be distributed to Walner Gachette instead distributed to the United States.

COUNT 4

ENFORCEMENT OF FEDERAL TAX LIENS
AGAINST PROPERTY TITLED TO A2Z RENTALS AND LBS HOME LOAN

79.     Pursuant to IRC §§ 6321 and 6322, liens for unpaid federal taxes in favor of the United States have arisen against all property and rights to property of the defendant Walner Gachette as of the dates and in the amounts of each of the assessments described in paragraphs 63 through 68, above.

80.     Notices of Federal Tax Liens were properly recorded in the real property records of Orange County, Florida, as set forth in paragraph 70, above.

81.     Walner Gachette's primary business activity is buying, rehabilitating, renting, and selling residential rental properties.

82.     Walner Gachette has been able to continue with his real estate business – and retain the proceeds from the sales of properties notwithstanding the recordation of Notices of Federal Tax Liens against all property and rights to property belonging to him – because most of the properties under his control since 2012 have been titled to A2Z Rentals or to LBS Home Loan.  A2Z Rentals and LBS Home Loan are not named in any recorded Notices of Federal Tax Lien.  Walner Gachette, acting through A2Z Rentals and LBS Home Loan, has sold in the aggregate at least 27 residential rental properties since March 2016, when the first Notice of Federal Tax Lien against Walner Gachette was recorded.

83.     Currently, most of the properties in Walner Gachette's portfolio are titled to A2Z Rentals, namely, the properties identified in paragraphs 42 through 50, above, or to LBS Home Loan, namely, the properties identified in paragraphs 51 through 59, above.

84.     Walner Gachette created and is the manager of A2Z Rentals.  Walner Gachette transferred 100% of the membership interest in A2Z Rentals to The Walner G. Gachette Living Trust on or about August 31, 2018.  The membership interest was transferred to The Walner G. Gachette Living Trust subject to federal tax liens for which notice had been recorded beforehand, namely, liens for Walner Gachette's outstanding liabilities for 2012, 2013, and 2014 income tax, and for the IRC § 6701 penalty.

85.     The A2Z Rentals membership interest is subject to the claims of the United States against Walner Gachette for the reasons set forth in paragraphs 74 through 77, above.

86.     LBS Home Loan, Inc. ("LBS Home Loan") is a Florida corporation for which Walner Gachette is the president and sole shareholder.

87.     Walner Gachette resides rent-free in a home – 9741 Portofino Drive in Orlando – to which LBS Home Loan holds legal title.

88.     Both A2Z Rentals and LBS Home Loan have bank accounts in which rent payments and sale proceeds are deposited.  Walner Gachette maintains exclusive control over these bank accounts, and he uses their bank accounts for whatever bills need to be paid, whether for the titleholder on the account or another entity he controls.  Gachette also uses the business bank accounts and their other assets to pay personal expenses, including personal debts to the Government, his wife's health insurance, and his own extensive international vacation travel.

89.     A2Z Rentals and LBS Home Loan have no employees.

90.     Walner Gachette maintains all company records for A2Z Rentals and LBS Home Loan.  He does not use any kind of accounting software or hard copy books, but uses an excel spreadsheet to keep track of rental receipts, and keeps track of sales by retaining HUD-1 forms. Walner Gachette pays contractors who work on the properties mostly in cash, but does not keep track of cash expenditures and thus does not know the exact cost of repairs.

91.     By virtue of the facts alleged in paragraphs 81 through 90, above, A2Z Rentals and LBS Home Loan are mere nominee owners of the properties titled to them, Walner Gachette is the true and beneficial owner of those properties, and the properties are subject to the federal tax liens identified in paragraph 80, above, against all property and rights to property belonging to Walner Gachette.  The properties are therefore subject to judicial sale in this action pursuant to IRC § 7403.

92.     By virtue of the facts alleged in paragraphs 81 through 90, above, A2Z Rentals and LBS Home Loan are alter egos of Walner Gachette, and the properties titled to them are subject to the federal tax liens identified in paragraph 79, above, against all property and rights to property belonging to Walner Gachette, and the properties are therefore subject to judicial sale in this action pursuant to IRC § 7403.

WHEREFORE, the United States asks for judgment on Count 4 in its favor as follows:

a.  Determining that the following properties are subject to federal tax liens for Walner Gachette's federal tax liabilities:

1.  S Apollo Drive;
2.  332 Apopka Hills Circle;
3.  5251 Clarion Hammock Drive;
4.  2081 San Jose Boulevard;
5.  10125 Donhill Court;
6.  3519 Clear Stream Drive;

34

      7.  2132 Rouse Lake Road;

      8.  705 Spring Creek Drive;

      9.  1172 Salina Avenue;

      10. 1413 Pine Lake Road;

      11. 11110 Iron Bridge Road;

      12. 2817 Carmel Park Drive;

      13. 2437 Stone Cross Circle;

      14. 7954 Soft Pine Circle;

      15. 2182 Patterson Avenue;

      16. 2129 Hillcrest Road;

      17. 1096 Stewart Avenue; and

      18. 1208 Wiley Avenue

b.  Decreeing that these 18 properties shall be sold free and clear of any right, claim or interest of all parties to this action;

c.  Determining the relative priority of the parties' various rights, claims and interests to these 18 properties; and

d.  Decreeing the distribution of the net sale proceeds accordingly, with any amounts that would otherwise be distributed to Walner G. Gachette instead distributed to the United States.

<u>COUNT 5</u>

ENFORCEMENT OF FEDERAL TAX LIENS
AGAINST PROPERTY TITLED TO MARIA GACHETTE

93.     Pursuant to IRC §§ 6321 and 6322, liens for unpaid federal taxes in favor of the United States have arisen against all property and rights to property of the defendant Walner G. Gachette as of the dates and in the amounts of each of the assessments described in paragraphs 63 through 68, above.

94.     Notices of Federal Tax Liens were properly recorded in the real property records of Orange County, Florida, as set forth in paragraph 70, above.

95.     Maria Gachette acquired title to 4785 Piedmont Court in May 2015.  She acquired title to 1318 Queensway Road in November 2015.  Walner Gachette provided all the funds for both purchases.

96.     On November 22, 2016, a Notice of Federal Tax Lien (Serial No. 237871616) for Walner Gachette's federal income tax liabilities for 2010, 2011, 2012, 2013, and 2014, was recorded in the Orange County, Florida real property records, naming Maria Gachette as a nominee owner of 4785 Piedmont Court.  Also on November 22, 2016, a Notice of Federal Tax Lien (Serial No. 237871216) for Walner Gachette's federal income tax liabilities for 2010, 2011, 2012, 2013, and 2014, was recorded in the Orange County, Florida real property records naming Maria Gachette as a nominee owner of 1318 Queensway Road.

97.     Because Walner Gachette provided funds to acquire the properties, and title was placed in Maria Gachette's name, a resulting trust is imposed by operation of Florida law upon 4785 Piedmont Court and 1318 Queensway Road, such that Maria Gachette holds nominal legal title to 4785 Piedmont Court and 1318 Queensway Road for the benefit of Walner Gachette as the true and beneficial owner, and the properties are therefore subject to judicial sale in this action pursuant to IRC § 7403.

98.     Walner Gachette owed substantial federal income tax liabilities to the United States at the time he transferred funds to purchase 4785 Piedmont Court and 1318 Queensway Road, and was in the midst of a lawsuit with the United States, *United States v. Walner Gachette, et al.*, Case No. 6:14-cv-1539 (M.D. Fla.), which ultimately resulted in an injunction terminating Walner Gachette's fraudulent tax return preparation business and an award of $5 million for the disgorgement of illicit profits.  Walner Gachette had masterminded a scheme, described in

paragraphs 18 through 22, above, to defraud the United States of millions of dollars.  He has caused title to most of his properties to be held by nominees and alter egos, as described in paragraphs 81 through 90, above.

99.     Walner Gachette transferred funds to purchase 4785 Piedmont Court and 1318 Queensway Road and caused title to these properties to be placed in Maria Gachette's name with the actual intent to hinder, delay or defraud the United States in its effort to collect Walner Gachette's federal tax liabilities, constituting avoidable fraudulent transfers pursuant to F.S.A. § 726.105(1).  The fraudulent intent is shown, in part, by the facts set forth in paragraph 99, above.

100.    The two properties, 4785 Piedmont Court and 1318 Queensway Road, are proceeds of a fraudulent transfer.  They are subject to the federal tax liens identified in paragraph 93, above, and are subject to judicial sale in this action pursuant to IRC § 7403.

WHEREFORE, the United States asks for judgment on Count 5 in its favor as follows:

a.  Determining that 4785 Piedmont Court and 1318 Queensway Road are subject to federal tax liens for Walner Gachette's federal tax liabilities;

b.  Decreeing that these two properties shall be sold free and clear of any right, claim or interest of all parties to this action;

c.  Determining the relative priority of the parties' various rights, claims and interests to these two properties; and

d.  Decreeing the distribution of the net sale proceeds accordingly, with any amounts that would otherwise be distributed to Walner Gachette instead distributed to the United States.

COUNT 6

ENFORCEMENT OF JUDGMENT OF DISGORGEMENT
AGAINST PROPERTIES CONTROLLED BY WALNER G. GACHETTE

101.    Walner Gachette engaged in the fraudulent conduct set forth in paragraphs 18

through 22, above, namely, a fraudulent tax return preparation business.

102.    On November 16, 2016, in *United States v. Walner Gachette, et al.*, Case No.

6:14-cv-1539-ACC-EJK (M.D. Fla.), a court of this district entered a permanent injunction

against Walner Gachette regarding his fraudulent tax return preparation business and awarded

the United States a judgment in the amount of $5 million for the disgorgement of illicit profits.

The $5 million judgment is in the nature of equitable monetary relief, and is enforceable through

the Court's inherent equitable powers, including through its civil contempt powers.

103.    After application of various payments and the calculation of statutory interest, and

after the failure of the defendant Walner Gachette to pay the $5 million judgment after notice and

demand, there remains due and owing from the defendant Walner Gachette to the United States

the sum of $4,163,106.30, as of April 30, 2020, plus interest from that date as provided by law,

for the disgorgement of illicit profits.

104.    Walner Gachette controls and is the true beneficial owner of the residential rental

properties identified in paragraphs 38 through 61, above, for the reasons specified in Counts 2

through 5, above.  He acquired those properties with the profits from his fraudulent scheme, the

very profits he has been ordered to disgorge.  Those properties are subject to the judgment of the

United States against Walner Gachette for the disgorgement of illicit profits.

105.    The Court may exercise its inherent power to enforce the disgorgement judgment by decreeing the sale of all properties controlled directly or indirectly by Walner Gachette, including those identified in paragraphs 38 through 61, above.

WHEREFORE, the United States asks for judgment on Count 6, as follows:

a.    In the event that the proceeds from the sale of the properties identified in paragraphs 38 through 61, above, satisfy Walner Gachette's federal tax liabilities, any excess amounts which would otherwise be distributed to him be distributed to the United State on account of its claim of disgorgement; or, in the alternative,

b.    The properties identified in paragraphs 38 through 61, above, be sold free and clear of any right, claim or interest of all parties to this action, and the sale proceeds be applied, first, to the costs of sale, second, to all outstanding liens against the properties and, third, to the United States for application to the disgorgement award in Case No. 6:14-cv-1539-ACC-EJK.

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

By:      *s/ Philip Doyle*
PHILIP DOYLE
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 310
Ben Franklin Station
Washington, D.C.  20044
Telephone:  (202) 514-9673
Facsimile: (202) 514-4963
Email: Philip.A.Doyle@usdoj.gov

39

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

United States of America

**DEFENDANTS**

Walner G. Gachette, individually as Trustee of Walner G. Gachette Living Trust; A2Z Rentals, LLC; LBS Home Loan, Inc.; Maria Gachette; Scott Randolph; Vickie L. Potts; Joe G. Tedder; et al.

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Orange
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Philip Doyle, U.S. Dept. of Justice, Tax Division, Wahington, DC 20044; 202-514-9673

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                    Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☒ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
26 USC 7401, 7403

Brief description of cause:
recovery of taxes; recovery of disgorgement judgment

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
1,692,540.79

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☐ Yes   ☒ No

**VIII. RELATED CASE(S) IF ANY**   *(See instructions):*   JUDGE   Anne Conway   DOCKET NUMBER   6:14-cv-1539-ACC-EJK

DATE   07/16/2020

SIGNATURE OF ATTORNEY OF RECORD   /s/ Philip Doyle

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**    **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**    **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.**  (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**    **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**    **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**    **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.