### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**                                                          **Case No: 6:20-cv-1267-ACC-EJK**

**WALNER G. GACHETTE, A2Z
RENTALS, LLC, LBS HOME LOAN,
INC., MARIA GACHETTE, SCOTT
RANDOLPH, VICKIE L. POTTS, JOE
G. TEDDER, LISA CULLEN,
VENTURA COUNTRY CLUB
HOMEOWNER'S ASS'N, INC., SKY
LAKE SOUTH HOMEOWNER'S
ASSOCIATION, INC., POLK COUNTY,
FLORIDA, ORANGE COUNTY,
FLORIDA, CITY OF ORLANDO,
FLORIDA and CHARLOTTE COUNTY,
FLORIDA,**

**Defendants.**

_____/

### REPORT AND RECOMMENDATION

This cause comes before the undersigned, referred from the Court, on Plaintiff United

States of America's Motion for Judgment on the Pleadings (the "Motion") on all counts of the

Complaint as to Defendant Walner G. Gachette ("W. Gachette") pursuant to Federal Rule of Civil

Procedure 12(c), filed on November 19, 2020. (Doc. 106.) As no opposition to the Motion has

been filed by W. Gachette, and the time to respond has passed, I review this Motion as unopposed

pursuant to Local Rule 3.01(c).

Upon consideration, and for the reasons set forth herein, I respectfully recommend that the

Motion be granted in part.

## I.     BACKGROUND

The United States initiated this action (the "Complaint") against W. Gachette in his individual capacity and as Trustee of the Walner G. Gachette Living Trust (the "Trust"), A2Z Rentals, LLC ("A2Z"), LBS Home Loan, Inc. ("LBS"), Maria Gachette ("M. Gachette"), Ventura Country Club Homeowner's Association, Inc., Sky Lake South Homeowner's Association, Inc., a number of Florida Counties, and a number of individuals in their capacity as county tax collectors.[1] (Doc. 1.) W. Gachette responded to the Complaint, filing a one-page answer (the "Answer") on September 16, 2020. (Doc. 89.)

### A.  The Underlying Scheme

The United States alleges that W. Gachette owned, operated, and franchised a tax return preparation business that produced thousands of fraudulent federal income tax returns generating profits via tax preparation fees for W. Gachette and his associates. (*Id.* ¶¶ 18, 21.) The United States avers that with the profits from his tax business W. Gachette invested in real estate, among other things, and created LBS in 2012 to purchase and sell properties for his own personal portfolio. (*Id.* ¶ 33.) The United States asserts that LBS also lent money to, and took mortgages from, other individuals working in W. Gachette's tax preparation businesses to purchase properties. (*Id.*)

---

[1] Of note, the Complaint names ten lienholders as defendants—two homeowner's associations and eight local government officials and entities. (Doc. 1 ¶¶ 8–17.) All ten lienholders have entered into stipulations with the United States and the Court has decreed that they will not participate substantively in the action unless and until the Court adjudicates whether the properties against which they assert liens may be sold in this action. (Docs. 46, 47, 48, 54, 55, 64, 65, 71, 90, 94.) Clerk's defaults have been entered against the remaining defendants, The Walner G. Gachette Living Trust, A2Z Rentals, LLC, LBS Home Loan, Inc., and Maria Gachette, followed by the filing of a Motion for Default Judgment, which I recommend granting in part under separate order to be entered concurrently. (Docs. 99, 107, 109.)

W. Gachette created A2Z in 2014 and used this company to acquire and sell residential rental properties for his personal portfolio. (*Id.* ¶ 34.) In August 2018, W. Gachette created a revokable trust under Florida law. (*Id.* ¶¶ 74, 77.) After the Trust was created, he transferred properties previously titled in his own name into the Trust. (*Id.* ¶ 75.) The United States asserts W. Gachette purchased residential rental properties or provided the funds to do so and titled them in the name of himself or his wife, M. Gachette, and later transferred the properties titled in his name to the Trust. (*Id.* ¶ 35.) As a result of his real estate investing, utilizing the profits from his tax preparation businesses, the United States asserts W. Gachette directly or indirectly controls and is the beneficial owner of at least 32 residential properties as of the date the Complaint in the instant action, 24 of which are at issue in the Complaint. (*Id.* ¶ 36.)

The United States names and discusses the method upon which various Defendants hold title to the 24 properties (collectively the "Properties") in the Complaint, all of which it alleges are located in the state of Florida.[2] (*Id.* ¶¶ 39–61.) The sole property held by W. Gachette is located at 2932 Willie Mays Parkway, Orlando, Florida (the "W. Gachette Property") (initially acquired by M. Gachette on January 7, 2015 and transferred to W. Gachette on January 18, 2019). (*Id.* ¶¶ 36, 38.) The properties held by the Trust are: 14404 Hertha Avenue, Orlando, Florida (acquired June 28, 2015); 4646 Zorita Street, Orlando, Florida (acquired January 28, 2015); and 5804 Laconia Road, Orlando, Florida (acquired June 28, 2015) (the "Trust Properties"). (*Id.* ¶¶ 36, 39–41.) The properties held by A2Z are: 14 S. Apollo Drive, Apopka, Florida (acquired June 12, 2015); 332 Apopka Hills Circle, Apopka, Florida (acquired November 13, 2014); 5251 Clarion Hammock Drive, Orlando, Florida (acquired April 29, 2014); 2081 San Jose Boulevard, Orlando, Florida (acquired June 29, 2015); 10125 Donhill Court, Orlando, Florida (acquired August 3,

---

[2] The Complaint does not list the zip codes for any of the Properties.

2014); 3519 Clear Stream Drive, Orlando, Florida (acquired October 1, 2014); 2132 Rouse Lake Road, Orlando, Florida (acquired February 18, 2014); 705 Spring Creek Drive, Ocoee, Florida (acquired January 27, 2017); and 1172 Salina Avenue, Port Charlotte, Florida (acquired June 23, 2017) (the "A2Z Properties"). (*Id.* ¶¶ 36, 42–50.) The properties held by LBS are: 1413 Pine Lake Road, Orlando, Florida (acquired April 4, 2019); 11110 Iron Bridge Road, Orlando, Florida (acquired March 22, 2012); 9817 Carmel Park Drive, Orlando, Florida (acquired June 11, 2012); 2437 Stone Cross Circle, Orlando, Florida (acquired April 3, 2014); 7954 Soft Pine Circle, Orlando, Florida (acquired February 3, 2014); 2182 Patterson Avenue, Orlando, Florida (acquired June 12, 2018); 2129 Hillcrest Road, Auburndale, Florida (acquired August 11, 2017); 1096 Stewart Avenue, Frostproof, Florida (acquired August 15, 2017); and 3115 Wiley Avenue, Mims, Florida (acquired March 29, 2019) (the "LBS Properties"). (*Id.* ¶¶ 36, 51–59.) M. Gachette holds title to the following properties: 4785 Piedmont Court, Orlando, Florida (acquired May 7, 2015); and 1318 Queensway Road, Orlando, Florida (acquired November 3, 2015) (the "M. Gachette Properties"). (*Id.* ¶¶ 36, 60–61.)

**B.  The Resulting 2014 Civil Action[3]**

The Internal Revenue Service began an investigation into W. Gachette's tax preparation businesses in 2011, which resulted in the filing of a complaint in September 2014 against W. Gachette and his companies in the Middle District of Florida. *United States v. Walner Gachette, et al.*, No. 6:14-cv-1539 (the "2014 Civil Action"); (*Id.* ¶¶ 22–25.) As a result of the 2014 Civil

---

[3] For background purposes, in March 2015, the United States also commenced a criminal action against W. Gachette in the Middle District of Florida, *United States v. Walner G. Gachette*, No. 6:15-cr-00062 (the "Criminal Action"), in which W. Gachette pled guilty to filing fraudulent and false personal income tax returns for himself for the years 2010 and 2011. (*Id.* ¶ 28.) W. Gachette has completed his sentence and all restitution from the Criminal Action was paid. (*Id.*) Because the Criminal Action is not relevant to the relief sought in the Motion, it need not be discussed further here.

Action, the United States obtained a consensual permanent injunction against W. Gachette and his companies to cease their tax preparation businesses and for W. Gachette to disgorge $5,000,000 dollars in illicit profits (the "Disgorgement Judgment"), of which the United States alleges it is still owed over $4,100,000. (*Id.* ¶ 25.)

### C.  The Assessments

The United State alleges that W. Gachette and his companies underpaid their own income taxes. (*Id.* ¶ 18.) Specifically, the United States sets forth in its Complaint that W. Gachette failed to report his federal income tax liabilities for 2010, 2011, 2012, and 2014 accurately, resulting in tax deficiencies of $680,000 plus interest and penalties. (*Id.* ¶ 27.) Additional income tax assessments were made against W. Gachette for 2010, 2011, 2012, and 2014, of which the years 2012 and 2014 remain unpaid. (*Id.*) The United States asserts W. Gachette also has not paid his 2013, 2017, or 2018 federal income taxes, for which assessments were also made. (*Id.* ¶¶ 27, 62, 64, 66–67.) Pursuant to IRC § 6701, a penalty of $84,000 (the "6701 Penalty") was assessed against W. Gachette for aiding in the preparation of 84 false tax returns in conjunction with his involvement in the fraudulent tax preparation businesses. (*Id.* ¶¶ 26, 68.)

These assessments (the "Assessments"), totaling $1,692,540.79, for income tax liabilities for the tax years 2012, 2013, 2014, 2017, and 2018, and the 6701 Penalty are set forth in the Complaint as follows:

| Period | Date of Assessment | Amount of Assessment | Nature of Assessment |
|---|---|---|---|
| Income Tax December 31, 2012 | November 17, 2014 | $70,441 | Tax reported on return |
| Income Tax December 31, 2012 | November 17, 2014 | $1,254 | Penalty for failure to pay estimated tax |
| Income Tax December 31, 2012 | April 18, 2016 | $40 | Collection fees |
| Income Tax December 31, 2012 | July 4, 2016 | $161,195 | Additional tax after examination |

| Income Tax December 31, 2012 | July 4, 2016 | $32,239 | Accuracy related penalty, IRC § 6662 |
|---|---|---|---|
| Income Tax December 31, 2012 | July 4, 2016 | $17,411.36 | Interest accrued to date of assessment |
| Income Tax December 31, 2012 | October 15, 2018 | $17,736.06 | Penalty for late payment |
| Income Tax December 31, 2012 | November 12, 2018 | $689.03 | Penalty for late payment |
| Income Tax December 31, 2012 | November 12, 2018 | $9,310.97 | Interest accrued to date of assessment |
| Income Tax December 31, 2013 | November 23, 2015 | $634,869 | Tax reported on return |
| Income Tax December 31, 2013 | November 23, 2015 | $1,535.29 | Penalty for failure to pay estimated tax |
| Income Tax December 31, 2013 | November 23, 2015 | $142,724.92 | Penalty for late filing |
| Income Tax December 31, 2013 | November 23, 2015 | $63,433.30 | Penalty for late payment |
| Income Tax December 31, 2013 | November 23, 2015 | $36,171.98 | Interest accrued to date of assessment |
| Income Tax December 31, 2014 | July 11, 2016 | $195,422 | Tax as determined by IRS in the absence of a return |
| Income Tax December 31, 2014 | July 11, 2016 | $121,965.30 | Penalty for fraudulent failure to file return, IRC § 6651(f) |
| Income Tax December 31, 2014 | July 11, 2016 | $12,617.10 | Penalty for late payment |
| Income Tax December 31, 2014 | July 11, 2016 | $9,940.40 | Interest accrued to assessment date |
| Income Tax December 31, 2017 | November 5, 2018 | $24,231 | Tax reported on return |
| Income Tax December 31, 2017 | November 5, 2018 | $310.09 | Penalty for failure to pay estimated tax |
| Income Tax December 31, 2017 | November 5, 2018 | $728.08 | Penalty for late payment |
| Income Tax December 31, 2017 | November 5, 2018 | $596.91 | Interest accrued to date of assessment |
| Income Tax December 31, 2017 | June 25, 2018 | $155.42 | Fee for dishonored payment |

| Income Tax December 31, 2017 | October 7, 2019 | $20 | Collection fee |
|---|---|---|---|
| Income Tax December 31, 2018 | September 23, 2019 | $11,102 | Tax reported on return |
| Income Tax December 31, 2018 | September 23, 2019 | $360 | Penalty for failure to pay estimated tax |
| Income Tax December 31, 2018 | September 23, 2019 | $333.06 | Penalty for late payment |
| Income Tax December 31, 2018 | September 23, 2019 | $271.21 | Interest accrued to date of assessment |
| IRC § 6701 Penalty December 31, 2012 | May 8, 2017 | $84,000 | Penalty for aiding and abetting understatement of tax, IRC § 6701 |
| IRC § 6701 Penalty December 31, 2012 | July 10, 2017 | $20 | Collection fee |

(Doc. 1 ¶¶ 63–68.)

### D.  The Instant Action

The United States now seeks to obtain a judgment against W. Gachette for the Assessments, to enforce tax liens that automatically arose from the Assessments (the "Tax Liens") against the Properties held by W. Gachette, the Trust, A2Z, LBS, and M. Gachette, and to enforce the Disgorgement Judgment. (*Id.* ¶ 1.) Specifically, the Complaint requests: (1) to reduce the Assessments—and their corresponding Tax Liens—against W. Gachette to judgment, (2) to enforce the Tax Liens against the W. Gachette Property, (3) to enforce the Tax Liens against the Trust Properties, (4) to enforce the Tax Liens against the A2Z and LBS Properties under an alter ego or nominee theory, (5) to enforce the Tax Liens against the M. Gachette Properties, and (6) to enforce the Disgorgement Judgment against the Properties. (Doc. 106 at 4 (citing Doc. 1 ¶¶ 32–36).)

On September 17, 2020, W. Gachette filed his answer *pro se* (the "Answer"). (Doc. 89.) The totality of the Answer is as follows:

"A lien should not be enforced or added to any homes under my business name. I understand if a lien is put under the homes in my personal name. Also[,] Maria Gachette do [sic] not speak English well and she has nothing to do with this lawsuit." (Doc. 89 at 1.) The Motion was filed on October 27, 2020 (Doc. 106), followed by a Motion for Default Judgment against the Trust, A2Z, LBS, and M. Gachette (Doc. 109), none of which were answered.

## II.   STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate when material facts are not in dispute and judgment can be rendered by looking at the substance of the pleadings and any judicially noticed facts." *Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 137 F.3d 1293, 1295 (11th Cir. 1998) (citing Fed. R. Civ. P. 12(c)).

In the context of a motion for judgment on the pleadings, courts do not consider evidentiary material outside the pleadings, but rather look solely to the pleadings and any properly incorporated exhibits to the pleadings. *See Horsley v. Feldt*, 304 F.3d 1125, 1134-35 (11th Cir. 2002). In considering whether to grant judgment on the pleadings, "the Court accepts the facts alleged in the complaint as true and draws all reasonable inferences in favor of the non-movant." *Brown v. Brock,* 169 Fed. Appx. 579, 581 (11th Cir. 2006) (unpublished); *Bankers Ins.*, 137 F.3d at 1295. Therefore, "[a] motion for judgment on the pleadings is subject to the same standard as a Rule 12(b)(6) motion to dismiss." *Roma Outdoor Creations, Inc. v. City of Cumming*, 558 F. Supp. 2d 1283, 1284 (N.D. Ga. 2008) (internal quotation omitted).

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint. *Id.* District courts must accept all well-pleaded allegations within the complaint and any documents attached thereto as true and must read the complaint in the light most favorable to the plaintiff.

*Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam). Furthermore, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (internal citations omitted); *see also Boyd v. Peet*, 249 Fed. App'x. 155, 157 (11th Cir. 2007) (affirming the district court's order granting a motion for judgment on the pleadings and explaining that "[t]he complaint's allegations must plausibly suggest that the defendant has a right to relief, raising that possibility above a 'speculative level").

In order to survive the motion, the complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is plausible on its face when the plaintiff alleges enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The mere recitation of the elements of a claim is not enough to grant a motion to dismiss, and the district court need not give any credence to legal conclusions that are unsupported by sufficient factual material. *Id.*

When a plaintiff seeks judgment on the pleadings based on the insufficiency of the answer, courts have first looked to whether the complaint states a cause of action, assuming all facts alleged in the complaint are true. *In re Mabbott*, 255 B.R. 787, 789 (Bankr. M.D. Fla. 2000). If the complaint survives that threshold review, the court then looks to the answer to determine whether the defendant has interposed a good faith denial of any facts essential to the plaintiff's cause of action or a legally viable affirmative defense. *Id.* If the defendant has done neither, then judgment should be entered for the plaintiff. *Id.*

The pleadings of a *pro se* litigant "are held to a less stringent standard than those drafted by an attorney, and therefore must be liberally construed." *United States v. Leemon*, No. 2:09-cv-216-FtM-29SPC, 2009 WL 10670602, at *1 (M.D. Fla. Sept. 23, 2009) (citing *Erickson v. Pardus*,

551 U.S. 89, 94 (2007); *Trawinski v. United Techs., Carrier Corp.*, 313 F.3d 1295, 1297 (11th Cir. 2002)). Even when filed by a *pro se* defendant, answers which do not deny specific allegations are deemed admitted as to the unaddressed allegations. *Id.*; Fed. R. Civ. P. 8(b)(6).

## III.   DISCUSSION

The United States commenced this action under IRC §§ 7401, 7402(a), and 7403. (Doc. 1 ¶ 1.) While IRC §§ 7401 and 7402(a) authorize suit and grant jurisdiction to the district courts, § 7403 specifically relates to actions to enforce a lien or to subject property to payment of tax. IRC §§ 7401, 7402(a), 7403. IRC § 7403 states, in relevant part:

> (a) Filing.--In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability. For purposes of the preceding sentence, any acceleration of payment under section 6166(g) shall be treated as a neglect to pay tax.
>
> (b) Parties.--All persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto.
>
> (c) Adjudication and decree.--The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States. If the property is sold to satisfy a first lien held by the United States, the United States may bid at the sale such sum, not exceeding the amount of such lien with expenses of sale, as the Secretary directs.

IRC § 7403. In what is often referred to as a "lien foreclosure" suit under § 7403, a court determines whether the United States's rights to the seized property are superior to those of other claimants.

*United States v. Nat'l Bank of Com.*, 472 U.S. 713, 721 (1985) (comparing the enforcement procedure of a lien-foreclosure suit under § 7403 to an administrative lien under IRC § 6331).

Pursuant to IRC §§ 6321 and 6322, a tax lien arises by operation of law upon the assessment of tax and attaches to *all property and rights to property* belonging to the taxpayer. IRC §§ 6321–22; *see also United States v. Nat'l Bank of Commerce,* 472 U.S. 713, 719–20 (1985) (the language of Section 6321 "is broad and reveals on its face that Congress meant to reach every interest in property that the taxpayer might have."). Federal tax liens are not self-executing, however. *United States v. Isagba*, No. 5:17-CV-93-Oc-TJC-PRL, 2017 WL 6543830, at *4 (M.D. Fla. Oct. 31, 2017), *report and recommendation adopted*, 2017 WL 6539049 (M.D. Fla. Dec. 21, 2017). In order to act on a tax lien, "the IRS must take affirmative action to enforce collection of the unpaid taxes, including the filing of a lien-foreclosure suit." *Id.* (citing *Nat'l Bank of Commerce*, 472 U.S. at 720 (1985)).

Where the United States asserts its tax lien in a lien foreclosure suit, the "threshold question" is whether and to what extent the taxpayer had "property" or "rights to property" to which the tax lien could attach. *Aquilino v. United States*, 363 U.S. 509, 512–14 (1960) (discussing 26 U.S.C. § 3670 (1952 ed.) (as amended and currently codified at 26 U.S.C. § 6321 of the Internal Revenue Code), which provided that "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person") (quoting *Morgan v. Comm'r*, 309 U.S. 78, 82 (1940)). In order to answer that question, courts look to state law, as it controls when determining the nature of the interest a taxpayer has in property. *Id.* (citing *Morgan v. Comm'r*, 309 U.S. 78, 82 (1940)). The IRC provision establishing a tax lien does not create a property right; instead, it only attaches "consequences" to rights created under state law.

*Id.* (citing *United States v. Bess*, 357 U.S. 51, 55, 78 S. Ct. 1054, 1057 (1958). Therefore, only after it is determined that a tax lien has attached to a taxpayer's state-created interest will federal law be used to determine the priority of any competing liens asserted against the taxpayer's property or rights to property. *Id.*

The United States moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) against W. Gachette on "all counts of the complaint on account of the well-pleaded factual allegations set forth in its complaint, and [W. Gachette's] failure to deny any material factual averment or to interpose any affirmative defense." (Doc. 106 at 1.) The United States seeks reduction of the Assessments to judgment, and enforcement of the Tax Liens arising from the Assessments against the Properties, whether titled to W. Gachette individually or to Defendants A2Z, LBS, M. Gachette, or the Trust, and enforcement of the Disgorgement Judgment. (*Id.* ¶ 1.) In the Complaint, the United States seeks to sell the Properties free and clear of any right, claim, or interest of any party to the action regardless of whether legal title is held directly by W. Gachette or any other party, and to apply the proceeds of the sale to the Tax Liens and the Disgorgement Judgment. (*Id.*)

### A. Count 1 – Judgment for Tax Liabilities Against W. Gachette

In Count 1 of the Complaint, the United States seeks a judgment in its favor for Assessments made against W. Gachette for income tax liabilities for the years 2012, 2013, 2014,

2017, and 2018, and a tax penalty pursuant to IRC § 6701, all totaling $1,692,540.79,[4] plus interest and other statutory additions accruing after the Complaint was filed.[5] (Doc. 1 ¶¶ 62–68.)

An assessment of tax is presumptive proof that the taxpayer is liable for that amount. *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002) ("An 'assessment' amounts to an IRS determination that a taxpayer owes the Federal Government a certain amount of unpaid taxes. It is well established in the tax law that an assessment is entitled to a legal presumption of correctness— a presumption that can help the Government prove its case against a taxpayer in court."). Assessments for unpaid taxes are normally entitled to a presumption of correctness so long as they are supported by a minimal factual foundation. *United States v. White*, 466 F.3d 1241, 1248 (11th Cir. 2008) (citing *Palmer v. U.S. I.R.S.*, 116 F.3d 1309, 1312 (9th Cir. 1997) (citing *United States v. Stonehill*, 702 F.2d 1288, 1293 (9th Cir. 1983) (holding that although the government bears the initial burden of proof in an action to collect tax, the initial burden is met "merely by introducing its assessment of tax due")). Where a party fails to appear or otherwise defend an action, it cannot overcome the presumptive validity of an IRS assessment. *Isagba*, 2017 WL 6543830, at *4.

Here, the United States pleads each of the individual Assessments for tax liabilities and the 6701 Penalty in the Complaint.[6] (Doc. 1 ¶¶ 63–68.) Although W. Gachette filed an Answer, even

---

[4] The United States alleges tax liabilities for the year 2012 in the amount of $2,831.34, for the year 2013 in the amount of $1,165,323.87, for the year 2014 in the amount of $404,216.69, for the year 2017 in the amount of $22,588.04, and for the year 2018 in the amount of $159.60. (Doc. 1 ¶¶ 63–67.) Additionally, the United States alleges that W. Gachette owes a tax penalty pursuant to IRC § 6701 for the tax period of 2012 in the amount of $97,426.25, plus interest and statutory additions. (*Id.* ¶ 68.)

[5] Of note, Counts 2 through 6 rely on a determination in Count 1 that the United States has met its burden of establishing the validity of the Assessments and the resulting Tax Liens in order to proceed with enforcement of the Tax Liens as requested in the Complaint.

[6] Although the United States did not attach copies of the Assessments to its motion papers or otherwise place them before this Court, it is unnecessary to do so in the context of a motion for judgment on the pleadings. *See Horsley v. Feldt*, 304 F.3d 1125, 1134-35 (11th Cir. 2002)

applying the most liberal reading for a *pro se* party, the Answer did not address or otherwise dispute the validity of the Assessments. (Doc. 89.) The Answer simply states "[a] lien should not be enforced or added to any homes under my business name. I understand if a lien is put under the homes in my personal name." (Doc. 89 at 1.)

The Answer does not address the sufficiency of the pleadings, or otherwise deny or assert affirmative defenses regarding the Assessments, as set forth in Federal Rule of Civil Procedure 10(b). Fed. R. Civ. P. 10(b) (explaining that a party must state its claims or defenses). In fact, by stating, "I understand if a lien is put under the homes in my personal name" W. Gachette appears to admit the Assessments' validity. (*Id.*) Therefore, as set forth in the Federal Rule of Civil Procedure 8(b)(6), where, as here, a party fails to answer an allegation, the allegations in Count 1 are deemed admitted. As a result, the undersigned recommends entering judgment in favor of the United States against W. Gachette for income tax liabilities as set forth in the Assessments in the amount of $1,692,540.79, for the 6701 Penalty, and interest and other statutory additions later accruing.

### B. Count 2 – Enforcement of Tax Liens Against Property Titled to W. Gachette

In Count 2, the United States seeks enforcement, under IRC § 7403, of the Tax Liens arising from the Assessments pursuant to IRC §§ 6321 and 6322 against the W. Gachette Property. (Doc. 1 ¶ 69.) Specifically, the United States requests in the Complaint that this Court: (1) determine that the W. Gachette Property is subject to the Tax Liens; (2) decree that the W. Gachette Property may be sold free and clear of any right, claim or interest of all parties to this action; (3) determine the relative priority of the parties' rights, claims, or interests to the W. Gachette

---

(explaining that courts do not consider evidentiary materials outside the pleadings, but rather look solely to the pleadings and any properly incorporated exhibits to the pleadings when addressing a motion for judgment on the pleadings).

Property; and (4) decree the net sale proceeds, with any amounts that would otherwise be distributed to W. Gachette to be distributed to the United States. (Doc. 1 ¶ 71.)

IRC § 7403(a) authorizes a civil action in federal district court to enforce a tax lien "to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax." IRC § 7403(a). Federal tax liens may be enforced in a judicial proceeding by "joining all persons who may claim a lien upon or interest in such property, determining the appropriate priorities, selling the property free and clear of the interests of all parties to the action, and distributing the sale proceeds according to the parties' respective priorities." 26 U.S.C. § 7403; *see United States v. Rodgers*, 461 U.S. 677 (1983).

The United States, in the Complaint, alleges that W. Gachette holds legal title to the W. Gachette Property by virtue of a quitclaim deed from M. Gachette, which was given without consideration, dated January 18, 2019, and recorded on September 19, 2019. (Doc. 1 ¶ 38.) The Complaint contains allegations that although M. Gachette acquired title to the W. Gachette Property on January 1, 2015, W. Gachete provided all the funds to purchase the W. Gachette Property. The United States also sets forth in its Complaint that the W. Gachette Property is subject to two Special Assessments Liens in favor of the City of Orlando and may also be subject to property taxes owed to Orange County, Florida. (*Id.*)

In his Answer, W. Gachette appears to admit and agree to the relief requested in Count 2 by stating, "I understand if a lien is put under the homes in my personal name." (Doc. 89 at 1.) Based on the validity of the Assessments as discussed *infra*, the Tax Liens that arise by operation of law upon the Assessments are also valid and attach to the W. Gachette Property. Gachette has implicitly admitted the allegations of Count 2, and I recommend granting judgment in favor of the United States and against W. Gachette on Count 2 to the extent that the W. Gachette Property

located at 2932 Willie Mays Parkway, Orlando, Florida, is subject to the Tax Liens and that they may be enforced against it.

However, the United States does not seek only a determination that the W. Gachette Property is subject to the Tax Liens. It also seeks a determination of the parties' various rights, claims, or interests in the W. Gachette Property, a decree to sell the W. Gachette Property, and a decree regarding the distribution of any net sale proceeds. (Doc. 1 ¶ 71.)

District Courts have the right to order the sale of property encumbered by a tax lien pursuant to IRC § 7403(c), and "to render such judgments and decrees as may be necessary or appropriate" to complete that sale. *United States v. Christiansen*, 414 F. App'x 218, 220 (11th Cir. 2011) (citing IRC § 7402(a) and 28. U.S.C. § 1340 (vesting jurisdiction in the district courts over internal revenue matters)). The United States may seek a forced sale of a property in which a delinquent taxpayer holds an interest, even if a third party also holds an interest. *United States v. Dase*, 416 F. Supp. 3d 1334, 1339 (N.D. Ala. 2019) (citing *United States v. Rodgers*, 461 U.S. 677, at 691–94 (1893)). The suit itself is a plenary action in which the court shall "adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property." *Isagba*, 2017 WL 6543830, at *4 (quoting IRC § 7403(c) (internal quotations omitted)).

Where a third party holds an interest in the property, however, "[IRC] § 7403 does not require a district court to authorize a forced sale under absolutely all circumstances, and . . . some limited room is left in the statute for the exercise of reasoned discretion." *Dase*, 416 F. Supp. 3d at 1338 (citing *Rodgers*, 461 U.S. at 706).

> [W]hen the interests of third parties are involved, the following fairly limited set of considerations will almost always be paramount: (1) the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes; (2) "whether the third party with a non-liable separate interest in the property would,

> in the normal course of events, . . have a legally recognized expectation that that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors; (3) the likely prejudice to the third party, both in personal dislocation costs and in the sort of practical undercompenasation described [earlier in the *Rodgers* opinion]; and (4) the relative character and value of the non-liable and liable interests held in the property.

*Id.* at 1339 (quoting *Rodgers*, 461 U.S. at 710–11) (internal quotations omitted)).

The Motion did not discuss the rights and interests of various parties to the W. Gachette Property except to note that various lienholders intend to substantively participate once the Court finds that a forced sale is reasonable. Even if the undersigned were to decide that a forced sale is appropriate here, the United States's argument is insufficient to allow the Court to apportion the various parties' interests in the W. Gachette Property. Accordingly, the undersigned recommends denying the United States's Motion to the extent it seeks a sale and distribution of the proceeds without a determination of the priority of the various liens held by the parties being made.

### C. Count 3 – Enforcement of the Tax Liens Against the Trust Properties Pursuant to IRC § 7403

In Count 3 of the Complaint, the United States seeks enforcement of the Tax Liens against the Trust Properties via IRC § 7403. (Docs. 1 ¶ 76; 106 at 10–11.) The United States avers that under Florida law, because the Trust is revocable and W. Gachette is its settlor, all the Tax Liens attach to any property it owns or controls. (Doc. 106 at 10–11 (citing Fla. Stat § 736.0505(1)(a)).) The United States in its Complaint seeks the same determinations here as in Count 2: that the Trust Property is subject to the Tax Liens; the priority of the parties' rights, claims, and interests to the Trust Property; ordering the Trust Property to be sold; and decreeing that the net sale proceeds, with any amounts that would otherwise be distributed to W. Gachette, be distributed to the United States. (Doc. 1 ¶ 78.)

As previously discussed, IRC § 7403 allows enforcement of tax liens and liabilities against "any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability." IRC § 7403(a). Under Florida Statue § 736.0505(1)(a) "[t]he property of a revocable trust is subject to the claims of the settlor's creditors during the settlor's lifetime to the extent the property would not otherwise be exempt by law if owned directly by the settlor." Fla. Stat. § 736.0505(1)(a). "The transfer of property subsequent to the attachment of the lien does not affect the lien"; therefore, a property continues to be burdened by a lien once it attaches to the property. *Bess,* 357 U.S. at 57.

Here, the United States alleges that W. Gachette created the Trust as a revokable trust in August 2018 and transferred the Trust Properties to it on August 31, 2018. (Doc. 1 ¶¶ 74, 75, 77.) Additionally, the United States alleges the Trust acquired the Trust Properties from W. Gachette after they were already subject to a majority of the pre-2018 recorded Tax Liens against W. Gachette, which totaled over $1,827,478.41. (*Id.* ¶¶ 73, 75.) The United States also avers that the Trust Properties may be subject to real property tax liabilities owed to Orange County, Florida. (*Id.* ¶¶ 39–41.)

Even when reading it in the light most favorable to a *pro se* party, W. Gachette's Answer does not address any of the allegations regarding the creation of the trust, his status as the alleged settlor of the Trust, or the Trust's status as a revokable trust. (Doc. 89.) W. Gachette's failure to respond to the allegations require them to be deemed admitted pursuant to Federal Rule of Civil Procedure 8(b)(6).

The undersigned recommends granting judgment in favor of the United States and against W. Gachette on Count 3 to the extent that the Trust Properties are subject to the Tax Liens and they may be enforced against the Trust Properties. However, as previously discussed for Count 2,

the United States did not address the rights and interests of various parties to the Trust Properties in either the Complaint or the Motion, except to note that various lienholders intend to substantively participate once the Court finds a forced sale is reasonable. For the same reasons as discussed in Count 2, I recommend denying the Motion to the extent it seeks to obtain a determination of lien priority, a forced sale, and distribution of sale proceeds regarding the Trust Properties.

### D. Count 4 – Enforcement of the Federal Tax Liens Against the A2Z and LBS Properties

Under Count 4, the United States seeks enforcement of the Tax Liens against the A2Z and LBS Properties based on allegations set forth in the Complaint that A2Z and LBS are either nominal owners of the A2Z and LBS Properties or that A2Z and LBS are W. Gachette's alter ego, rendering W. Gachette their true beneficial owner. (Doc. 106 at 11.) The United States contends the Tax Liens arising from the Assessments against W. Gachette attach to the A2Z and LBS Properties and may be enforced under IRC § 7403. (*Id.*) In its Complaint, the United States seeks the same determinations here as in Counts 2 and 3: that the A2Z and LBS Properties are subject to the Tax Liens; the priority of the parties' rights, claims, and interests to the A2Z and LBS Properties; ordering that the A2Z and LBS Properties be sold; and decreeing the net sale proceeds, with any amounts that would otherwise be distributed to W. Gachette, be distributed to the United States. (Doc. 1 ¶ 92.)

Property in the hands of a delinquent taxpayer's nominee or alter ego is subject to federal tax liens against the taxpayer's property and rights to property. *G.M. Leasing v. United States*, 429 U.S. 338, 351 (1977) (explaining that, "[i]f petitioner was [the delinquent taxpayer's] alter ego," it would "then follow that the Service could properly regard petitioner's assets as [the delinquent taxpayer's] property subject to the lien under IRC § 6321, and the Service would be empowered,

under IRC § 6331, to levy upon assets held in petitioner's name in satisfaction of [the delinquent taxpayer's] income tax liability.") (citing *Griffiths v. Comm'r*, 308 U.S. 355 (1939), and *Higgins v. Smith*, 308 U.S. 473, 476 (1940)). "'Property' and 'rights to property' for the purposes of 26 U.S.C. § 6321 include 'not only the property and rights to property owned by the delinquent taxpayer, but also property held by a third party if it is determined that the third party is holding the property as a nominee . . . of the delinquent taxpayer.'" *May v. United States*, 2007 WL 3287513 at *1 (11th Cir. 2007) (*quoting Spotts v. United States,* 429 F.3d 248, 251 (6th Cir. 2005)).

A nominee owner "is one who holds bare legal title to property for the benefit of another." *May*, 2007 WL 3287513, at *1 (quoting *Scoville v. United States*, 250 F.3d 1198, 1202 (8th Cir. 2001)). Under federal common law, the factors in considering whether a corporation is an individual defendant's nominee are: (1) the control the individual defendant exercises over the nominee and its assets; (2) the use of corporate funds to pay the individual defendant's personal expenses; and (3) the familial relationship, if any, between the individual defendant and the corporate officers. *Shades Ridge Holding Co., Inc. v. United States,* 888 F.3d 725, 729 (11th Cir. 1989); *see also United States v. Wilkins*, 2015 WL 4571304 at *7 (M.D. Fla. 2015). These factors are not applied rigidly; the most important consideration is who has active or substantial control over the property. *In re Steffen*, No. 8:13-cv-1700-T-27, 2014 WL 11428827 at *4 (M.D. Fla. 2014). An alter-ego relationship exists under Florida law when the following factors are satisfied: (1) a lack of separateness between the corporation and its shareholder(s); (2) improper conduct in the use of the corporation by the shareholder(s); and (3) the improper conduct was the proximate cause of the alleged loss. *Solomon v. Betras Plastics, Inc.*, 550 So. 2d 1182, 1184–85 (Fla. 5th DCA 1989). Reverse piercing of the corporate veil has been found to be "particularly appropriate to apply the alter ego doctrine . . . when the controlling party uses the controlled entity to hide

assets . . . to avoid the preexisting liability of the controlling party." *Braswell v. Ryan Investments, Ltd.*, 898 So. 2d 38 (Fla. 3d DCA 2008) (quoting *Select Creations, Inc. v. Paliafito Am., Inc.,* 852 F. Supp. 740, 744 (E.D. Wis. 1994)).

The "nominal owner" and "alter-ego" determinations are legal conclusions; however, in this case, the Complaint contains sufficient factual allegations to support them. The United States sets forth that W. Gachette used the profits from his fraudulent return preparation businesses to buy, rehabilitate, rent, and sell residential rental properties, and that he acquired properties and placed title in the name of either A2Z or LBS. (Doc. 1 ¶¶ 30–36.) The United States further alleges that W. Gachette: created A2Z and LBS; is the sole owner of LBS; formerly owned 100% of A2Z before transferring the membership interest to the Trust after the recordation of the Tax Liens; is the sole manager of A2Z; is the sole officer of LBS; maintains exclusive control over both companies including its records and bank accounts; and uses the funds in those accounts for business and personal expenditures at will and without regard to which entity nominally owns the bank account. (Doc. 1 ¶¶ 84–90.)

The allegations in the Complaint, taken as true, are sufficient to establish that A2Z and LBS are nominal owners of the A2Z and LBS Properties and W. Gachette is their true beneficial owner. The allegations of the Complaint, taken as true, are also sufficient to establish that A2Z and LBS are W. Gachette's alter egos.

The Answer again failed to respond to any of the relevant allegations in the Complaint, with the only potentially relevant statement being, "A lien should not be enforced or added to any homes under my business name." (Doc. 89.) Specifically, it does not address W. Gachette's establishment, control, or access and use of funds for either A2Z or LBS or any basis for the Tax Liens not to attach. (*Id.*) While it is clear from the Answer that W. Gachette does not want this

Court to make any findings allowing the United States to proceed against the A2Z or LBS Properties, his Answer lacks any factual or legal support. Therefore, the claims set forth in the Complaint relating to Count 4 are deemed admitted pursuant to Federal Rule of Civil Procedure 8(b)(6).

The undersigned recommends granting judgment in favor of the United States and against W. Gachette on Count 4 to the extent that the A2Z and LBS Properties are subject to the Tax Liens and they may be enforced against them. However, as with Counts 2 and 3, the United States did not address the rights and interests of various parties to the A2Z or LBS Properties in either the Complaint or the Motion, except to note that the A2Z an LBS Properties "may be subject to real property tax liabilities" and that various lienholders intend to substantively address their position following the outcome of the Motion. (Doc. 1 ¶¶ 42–59.) For the same reasons as discussed in Counts 2 and 3, I recommend denying the United States's Motion to the extent it seeks to obtain a determination of lien priority, a forced sale, and distribution of sale proceeds regarding the A2Z and LBS Properties.

**E. Count 5 – Enforcement of the Federal Tax Liens Against the M. Gachette Properties**

The United States seeks to enforce the Tax Liens against the M. Gachette Properties in Count 5 of the Complaint. The United States contends that the M. Gachette Properties are property or rights to property belonging to W. Gachette, and are therefore subject to the Tax Liens and enforcement of those liens pursuant to IRC § 7403 because: (1) M. Gachette holds title to the M. Gachette Properties only for the benefit of W. Gachette by virtue of a resulting trust, and (2) the M. Gachette Properties are the proceeds of a fraudulent transfer. (Doc. 106 at 15.) Once more, the United States seeks the same determinations as in Counts 2, 3, and 4: that the M. Gachette Properties are subject to enforcement of the Tax Liens; the priority of the parties rights, claims,

and interests to the M. Gachette Properties; ordering the M. Gachette Properties to be sold; and decreeing the net sale proceeds, with any amounts that would otherwise be distributed to W. Gachette, be distributed to the United States. (Doc. 1 ¶ 100.)

Under Florida law, "where property is acquired in the name of one person or entity with consideration provided by others, the transferee is presumed to hold title on a resulting trust for those who provided the consideration." *Towerhouse Condo. Inc., v. Millman*, 475 So. 2d 674, 677 (Fla. 1985) (citing *State, Dept. of Revenue v. Zuckerman-Vernon Corp.*, 354 So. 2d 353 (Fla. 1977)). Florida law also grants creditors the remedy of levying execution on a transferred asset or its proceeds if it has obtained a judgment against the debtor for fraudulent transfer. Fla. Stat. § 726.108(c)(3).

Here, the United States alleges in the Complaint that W. Gachette provided the funds to purchase the M. Gachette Properties. (Doc. 1 ¶¶ 95, 97.) The Complaint contains further allegations that W. Gachette acted with actual intent to hinder, delay, or defraud the United States by transferring the funds to M. Gachette in May and November of 2015 to purchase the M. Gachette Properties—after W. Gachette had already become indebted to the United States for taxes and after the commencement of the injunction suit against him that resulted in the Disgorgement Judgment. (Doc. 1 ¶¶ 98–99.) The United States also alleges that several "badges of fraud" set forth in the Complaint demonstrate his intent to defraud:

> W[.] Gachette transferred the funds used to purchase those properties [including the M. Gachette Properties] with the intent to defraud the United States: (1) At the time of the transfer he was in the midst of the injunction/disgorgement action brought by the United States that shut down his tax return preparation business and led to a $5 million disgorgement judgment; (2) he also owed most of the substantial tax liabilities that are the subject of this action; and (3) his pattern and practice was to place title to properties in the names of nominees and alter egos.

(Doc. 106 at 15.)[7]

Again, W. Gachette in his Answer does not dispute any of these allegations or set forth any affirmative defense. With regard to M. Gachette, he states only that "Maria Gachette do [sic] not speak English well and she has nothing to do with this lawsuit." (Doc. 89 at 1.) Because the allegations of Count 5 state a viable cause of action and W. Gachette has constructively admitted the allegations by failing to deny them, they should be deemed admitted pursuant to Federal Rule of Civil Procedure 8(b)(6).

Therefore, the undersigned recommends granting judgment in favor of the United States and against W. Gachette on Count 5 to the extent that the M. Gachette Properties are subject to the Tax Liens and they may be enforced against the M. Gachette Properties. However, as previously discussed for Counts 2 through 4, the United States did not address the rights and interests of various parties to the M. Gachette Properties in either the Complaint or the Motion, except to note that various lienholders intend to substantively participate once the Court finds a forced sale is reasonable. (Doc. 1 ¶¶ 60–61.) For the same reasons as discussed previously, I recommend denying the United Statess' Motion to the extent it seeks to obtain a determination of lien priority, a forced sale, and distribution of sale proceeds regarding the M. Gachette Properties.

### F. Count 6 – Enforcement of the Disgorgement Judgment Against the Properties

In its Motion the United States sets forth two alternative forms of relief for Count 6, which seeks enforcement of the Disgorgement Judgment: (1) apply any sale proceeds remaining after the

---

[7] Although the Motion does not specifically reference the portions of the Complaint that make these assertions, they can be found in the Complaint. The Complaint, for example, contains allegations that the M. Gachette Properties were purchased in May and November 2015, after the Disgorgement Action had already begun in September 2014, and after the IRS had begun issuing income tax assessments against him, and that W. Gachette's practice was to place title in the names of nominees and alter ego businesses. (Doc. 1 ¶¶ 25, 60–61, 63, 83–92.)

enforcement and satisfaction of the Tax Liens to the Disgorgement Judgment, or (2) decree the sale of the Properties on account of the Disgorgement Judgment, and apply all sale proceeds to the Disgorgement Judgment after the costs of sale and all outstanding liens have been satisfied. (Doc. 106 at 16.) The United States seeks the first alternative, requesting the proceeds from the sale of the Properties be deposited into the Court's registry, which would establish an unsecured claim arising from the Tax Liens and the Disgorgement Judgment, to be paid after the satisfaction of any liens which have priority. (*Id.*)

The United States has adequately pled facts in the Complaint that support its position regarding enforcement of the Disgorgement Judgment against the Properties. The United States sets forth that the Disgorgement Judgment was entered against W. Gachette on November 16, 2016; that W. Gachette controls and is the true beneficial owner of the Properties; that he acquired the Properties with the profits from his fraudulent scheme, which are the same profits he has been ordered to disgorge; and that the Properties are subject to the Disgorgement Judgment. (Doc. 1 ¶¶ 102–04.) Because W. Gachette's Answer does not address or otherwise dispute the validity of the Disgorgement Judgment, or that he is the beneficial owner of the Properties, the allegations regarding Count 6 should be deemed admitted pursuant to Federal Rule of Civil Procedure 8(b)(6).

Therefore, the undersigned recommends granting judgment in favor of the United States and against W. Gachette on Count 6 to the extent that the Properties are subject to the Disgorgement Judgment and it may be enforced against them. However, as previously discussed, the United States did not address the rights and interests of various parties to the Properties in either the Complaint or the Motion. Therefore, I recommend denying the Motion to the extent it seeks to force a sale and to obtain distribution of the sale proceeds in Count 6.

IV.     **RECOMMEDATION**

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the Motion be **GRANTED IN PART** as follows:

1. On Count 1, **GRANTING** judgment in favor of the United States against W. Gachette for income tax liabilities in the amount of $1,692,540.79, and for the 6701 Penalty, plus interest and other statutory additions.

2. On Count 2, **GRANTING** judgment in favor of the United States to the extent the W. Gachete Property located at 2932 Willie Mays Parkway, Orlando, Florida, is subject to federal tax liens arising from W. Gachette's federal tax liabilities pursuant to IRC §§ 6321 and 6322. To the extent the Motion seeks to obtain a determination of lien priority, a forced sale, and distribution of sale proceeds of the W. Gachette Property, it be **DENIED**.

3. On Count 3, **GRANTING** judgment in favor of the United States to the extent the Trust Properties held by the Walner G. Gachette Living Trust that are located at 14404 Hertha Avenue, Orlando, Florida, 4646 Zorita Street, Orlando, Florida, and 5804 Laconia Road, Orlando, Florida, are subject to federal tax liens arising from W. Gachette's federal tax liabilities pursuant to IRC §§ 6321 and 6322. To the extent the Motion seeks to obtain a determination of lien priority, a forced sale, and distribution of sale proceeds of the Trust Properties, it be **DENIED**.

4. On Count 4, **GRANTING** judgment in favor of the United States to the extent the A2Z and LBS Properties held by defendants A2Z Rentals, LLC, and LBS Home Loan, Inc., which are located at 14 S Apollo Drive, Apopka, Florida, 332 Apopka Hills Circle, Apopka, Florida, 5251 Clarion Hammock Drive, Orlando, Florida, 2081

San Jose Boulevard, Orlando, Florida, 10125 Donhill Court, Orlando, Florida, 3519 Clear Stream Drive, Orlando, Florida, 2132 Rouse Lake Road, Orlando, Florida, 705 Spring Creek Drive, Ocoee, Florida, 1172 Salina Avenue, Port Charlotte, Florida, 1413 Pine Lake Road, Orlando, Florida, 11110 Iron Bridge Road, Orlando, Florida, 9817 Carmel Park Drive, Orlando, Florida, 2437 Stone Cross Circle, Orlando, Florida, 7954 Soft Pine Circle, Orlando, Florida, 2182 Patterson Avenue, Orlando, Florida, 2129 Hillcrest Road, Auburndale, Florida, 1096 Stewart Avenue, Frostproof, Florida, and 3115 Wiley Avenue, Mims, Florida, are subject to federal tax liens arising from W. Gachette's federal tax liabilities pursuant to IRC §§ 6321 and 6322. To the extent the Motion seeks to obtain a determination of lien priority, a forced sale, and distribution of sale proceeds of the A2Z and LBS Properties, it be **DENIED**.

5. On Count 5, **GRANTING** judgment in favor of the United States to the extent the M. Gachette Properties held by Maria Gachette which are located at 4785 Piedmont Court, Orlando, Florida, and 1318 Queensway Road, Orlando, Florida, are subject to federal tax liens arising from W. Gachette's federal tax liabilities pursuant to IRC §§ 6321 and 6322. To the extent the Motion seeks to obtain a determination of lien priority, a forced sale, and distribution of sale proceeds of the M. Gachette Properties, it be **DENIED**.

6. On Count 6, **GRANTING** judgment in favor of the United States to the extent that all the Properties are subject to the Disgorgement Judgment and it may be enforced against the Properties. The Motion be **DENIED** to the extent Count 6 seeks to force a sale of the Properties and obtain and apply distribution of the sale proceeds to the Disgorgement Judgment.

## **NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on May 20, 2021.

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Parties