**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

v.                                                                                           Case No: 6:20-cv-1267-ACC-EJK

**WALNER G. GACHETTE, A2Z RENTALS, LLC, LBS HOME LOAN, INC., MARIA GACHETTE, SCOTT RANDOLPH, VICKIE L. POTTS, JOE G. TEDDER, LISA CULLEN, VENTURA COUNTRY CLUB HOMEOWNER'S ASS'N, INC., SKY LAKE SOUTH HOMEOWNER'S ASSOCIATION, INC., POLK COUNTY, FLORIDA, ORANGE COUNTY, FLORIDA, CITY OF ORLANDO, FLORIDA and CHARLOTTE COUNTY, FLORIDA,**

      **Defendants.**
_____/

**REPORT AND RECOMMENDATION**

This cause comes before the undersigned, referred from the Court, on the Motion for Default Judgment ("the Motion") filed by the United States as Plaintiff. (Doc. 109.) The United States seeks entry of default judgment against Defendants Walner G. Gachette, solely as trustee of the Walner G. Gachette Living Trust ("the Trust"), A2Z Rentals, LLC ("A2Z"), LBS Home Loan, Inc. ("LBS"), and Maria Gachette ("M. Gachette") (collectively, the "Defaulted Defendants") after they failed to respond to the Complaint and after Clerk's defaults were entered against them. Upon review of the Complaint, and the Motion and attached Declaration of Philip Doyle, Assistant United States Attorney assigned to this matter (Doc. 109-1), I respectfully recommend that the Motion be granted and that default judgment be entered as to all the Defaulted Defendants.

I.  BACKGROUND

On July 16, 2020, the United States filed a Complaint (Doc. 1) pursuant to 26 U.S.C. §§ 7401, 7402(a), and 7403 of the Internal Revenue Code of 1986 (the "IRC"). The United States seeks to obtain a judgment against Walner Gachette ("W. Gachette") for unpaid, assessed federal tax liabilities, and to enforce federal tax liens against 24 residential real properties. (*Id.* ¶ 1.) The United States named the Defaulted Defendants as parties because they may claim an interest in the subject real properties. (Doc. 109 at 3–4 (citing IRC §7403(b)).) The United States seeks to sell the properties free and clear of any right, claim, or interest of any party to the action, including the Defaulted Defendants, regardless of whether legal title is held directly by W. Gachette or the Defaulted Defendants and to enforce a judgment against W. Gachette granted in *United States v. Walner Gachette, et al.*, No. 6:14-cv-01539-ACC-EJK (the "2014 Civil Action"), for the disgorgement of unjust profits by recourse to those properties (the "Disgorgement Judgment").[1] (*Id.* ¶ 1.)

Because none of the Defaulted Defendant answered or otherwise responded to the Complaint, the United States moves for entry of default judgment against each of them. (Doc. 109.)

A. The Underlying Scheme

The United States alleges in the Complaint that W. Gachette owned, operated, and franchised a tax return preparation business that produced thousands of fraudulent federal income tax returns generating profits via tax preparation fees for W. Gachette and his associates. (Doc.

---

[1] To the extent this Motion seeks to enforce any tax judgments against the properties held by the Defaulted Defendants, that relief is inappropriate in the context of a default judgment and must be brought in a lien foreclosure action pursuant to IRC § 7403. *See United States v. Nat'l Bank of Com.*, 472 U.S. 713, 721 (1985) (comparing the enforcement procedure of a lien-foreclosure suit under § 7403, and an administrative lien under IRC § 6331).

1 ¶¶ 18, 21.) The United States avers that with the profits from his tax business, W. Gachette invested in real estate, among other things, and created LBS in 2012 to purchase and sell properties for his own personal portfolio. (*Id.* ¶ 33.) The United States asserts LBS also lent money to, and took mortgages from, other individuals working in W. Gachette's tax preparation businesses so they could purchase properties. (*Id.*)

The United States alleges that W. Gachette created A2Z in 2014, and used this company to acquire and sell residential rental properties for his personal portfolio.. (*Id.* ¶ 34.) The United States asserts W. Gachette purchased residential rental properties or provided the funds to do so and titled them in the name of himself or his wife, M. Gachette, and later transferred the properties titled in his name to the Trust. (*Id.* ¶ 35.) As a result of his real estate investing, the United States asserts that W. Gachette directly or indirectly controls, and is the beneficial owner of, at least 32 residential properties, 24 of which are addressed in the Complaint. (*Id.* ¶ 36.) Of the 24 residential properties at issue, only 1 is titled to W. Gachette individually, 18 are titled to either A2Z or LBS, 3 are titled to the Trust, and 2 are titled to M. Gachette. (*Id.*; Doc. 109 at 3.)

B. The Resulting 2014 Civil Action[2]

The Internal Revenue Service (the "IRS") began an investigation into W. Gachette's tax preparation businesses in 2011, which resulted in the filing of the 2014 Civil Action against him. (*Id.* ¶¶ 22–25.) As a result, the United States obtained a consensual permanent injunction against W. Gachette and his tax preparation companies, and the Disgorgement Judgment, which required

---

[2] For background purposes, in March of 2015, the United States also commenced a criminal action against W. Gachette in the Middle District of Florida, in the case of *United States v. Walner G. Gachette*, No. 6:15-cr-00062 (the "Criminal Action"), to which W. Gachette plead guilty to felonious filing of fraudulent and false personal income tax returns for himself for the years 2010 and 2011. (*Id.*, ¶ 28.) W. Gachette has completed his sentence and all restitution from the Criminal Action was paid. (*Id.*) As the Criminal Action is not relevant to the relief sought in the Motion, it need not be discussed further here.

W. Gachette to disgorge $5,000,000 dollars in illicit profits, of which the United States alleges it is still owed over $4,100,000. (*Id.* ¶ 25.)

### C. The Tax Liens

In addition to the claims against him arising from his tax preparation business, the United States asserts W. Gachette and his tax preparation companies underpaid their own income taxes. (*Id.* ¶ 18.) Specifically, W. Gachette failed to report his federal income tax liabilities for 2010, 2011, 2012, and 2014 accurately, resulting in tax deficiencies of $680,000 plus interest and penalties. (*Id.* ¶ 27.) He also failed to pay his 2013 income taxes. (*Id.*) The United States asserts various assessments were made against W. Gachette relating to his 2010–2014, 2017, and 2018 income taxes, as well as for aiding in the preparation of 84 false tax returns (the "Assessments"), and while some of the Assessments were paid, an outstanding balance remains totaling $1,692,540.79. (*Id.* ¶¶ 26, 27, 63–68.). The United States alleges multiple Notices of Federal Tax Liens (the "Tax Liens") were recorded in the real property records of Orange County, Florida, based on the Assessments. (*Id.* at ¶ 70.)

### D. The Instant Action

The United States seeks to enforce its Tax Liens and Disgorgement Judgment against 24 properties held by W. Gachette, M. Gachette, the Trust, A2Z, or LBS. (*Id.* ¶¶ 27, 32.) The Complaint consists of six counts, four of which are relevant here.[3] Counts 3, 4, and 5 seek enforcement, pursuant to IRC §§ 6321[4] and 6322,[5] of the Tax Liens against the properties to

---

[3] For the purposes of the Motion, property held by W. Gachette directly is not at issue because the Motion does not seek a default judgment against him. Counts 1 and 2 of the Complaint are against W. Gachette individually, so they are not relevant to the instant Motion and will not be further addressed.
[4] Granting a lien in favor of the United States upon all property and rights to property where a person fails to pay any tax. IRC § 6321.
[5] Allowing a general tax lien to remain in place until the liability is paid or the lien becomes

which the Trust, A2Z, LBS, and M. Gachette hold legal title. (Doc. 1 ¶¶ 72–100.) Count 6 seeks to enforce the Disgorgement Judgment for equitable monetary relief against all the properties "controlled" by W. Gachette, including those titled to the Trust, M. Gachette, A2Z, and LBS. (*Id.* ¶¶ 101–05.)

The Complaint names and discusses the method upon which each of the Defaulted Defendants holds title to the 23 properties relevant to this Motion, all of which are located in the state of Florida. (*Id.* ¶¶ 39–61.) The properties held by the Trust are: 14404 Hertha Avenue, Orlando, Florida; 4646 Zorita Street, Orlando, Florida; and 5804 Laconia Road, Orlando, Florida (the "Trust Properties"). (*Id.* ¶¶ 39–41.) The properties held by A2Z are: 14 S Apollo Drive, Apopka, Florida; 332 Apopka Hills Circle, Apopka, Florida; 5251 Clarion Hammock Drive, Orlando, Florida; 2081 San Jose Boulevard, Orlando, Florida; 10125 Donhill Court, Orlando, Florida; 3519 Clear Stream Drive, Orlando, Florida; 2132 Rouse Lake Road, Orlando, Florida; 705 Spring Creek Drive, Ocoee, Florida; and 1172 Salina Avenue, Port Charlotte, Florida (the "A2Z Properties"). (*Id.* ¶¶ 42–50.) The properties held by LBS are: 1413 Pine Lake Road, Orlando, Florida; 11110 Iron Bridge Road, Orlando, Florida; 9817 Carmel Park Drive, Orlando, Florida; 2437 Stone Cross Circle, Orlando, Florida; 7954 Soft Pine Circle, Orlando, Florida; 2182 Patterson Avenue, Orlando, Florida; 2129 Hillcrest Road, Auburndale, Florida; 1096 Stewart Avenue, Frostproof, Florida; and 3115 Wiley Avenue, Mims, Florida (the "LBS Properties"). (*Id.* ¶¶ 51–59.) M. Gachette holds title to the following properties: 4785 Piedmont Court, Orlando, Florida; and 1318 Queensway Road, Orlando, Florida (the "M. Gachette Properties"). (*Id.* ¶¶ 60–61.)

---

unenforceable by time. IRC § 6322.

### E. Clerk's Default Against the Defaulted Defendants and the Instant Motion

Summonses were issued as to the Trust, M. Gachette, A2Z, and LBS on August 26, 2020. (Doc. 56.) On September 3, 2020, M. Gachette was personally served with the summons and Complaint, and she also accepted service of the summons and Complaint for A2Z, LBS, and the Trust at the home she shared with W. Gachette. (Docs. 82–85.) After no responsive pleadings were filed, the United States filed a motion for Clerk's default against M. Gachette, A2Z, and LBS on September 30, 2020, and against the Trust on October 23, 2020. (Docs. 95, 105.)

Clerk's defaults were entered against M. Gachette, A2Z, and LBS on October 7, 2020, and against the Trust on October 27, 2020. (Docs. 99, 107.) After no responses were entered, or appearances made, on behalf of any of the Defaulted Defendants, the United States filed its Motion seeking default judgments against the Trust, M. Gachette, A2Z, and LBS on November 11, 2020. (Doc. 109.) The Motion remains unopposed, and the time to respond has long passed.

### II.   STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Afterwards, a court may enter a default judgment against the party. Fed. R. Civ. P. 55(b). "Entry of default judgment is only warranted when there is 'a sufficient basis in the pleadings for the judgment entered.'" *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). The Eleventh Circuit has interpreted "a sufficient basis" as "being akin to . . . survive a motion to dismiss for failure to state a claim." *Id.* (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n. 41 (11th Cir. 1997)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In addition to stating a plausible claim for relief, the movant must ensure that the court has jurisdiction over the parties. *Schwartz v. Fontana*, Case No. 8:16-cv-914-T-30AAS, 2016 WL 4272213, at *2 (M.D. Fla. Aug. 15, 2016). "All well-pleaded allegations of fact are deemed admitted upon entry of default; however, before entering a default judgment, a court must confirm that it has jurisdiction over the claims and that the complaint adequately states a claim for which relief may be granted." *See Nishimatsu*, 515 F.2d at 1206.

### III. DISCUSSION

#### A. Subject Matter Jurisdiction

Title 28 of the United States Code, Section 1340, provides that the "district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue," and 28 U.S.C. § 1345 provides that "the district courts shall have original jurisdiction of all civil actions . . . commenced by the United States." Additionally, IRC §§ 7402 and 7403 provide for the district court's jurisdiction over tax-related matters. *In rem* jurisdiction requires "the presence of the subject property within the territorial jurisdiction of the forum State." *Hanson v. Denckla*, 357 U.S. 235, 246 (1958). The test for applying *in rem* jurisdiction is the same test of minimum contacts that governs personal jurisdiction. *Shaffer v. Heitner*, 433 U.S. 186, 207 (1977). "When claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction." *Id.* at 187.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1340, 1345 and IRC §§ 7402, 7403. The United States commenced this action to foreclose federal tax liens pursuant to the IRC on

various real properties located in Florida. (Doc. 1.) As such, this Court has subject matter jurisdiction over the instant action.

### B. Personal Jurisdiction

Upon review of the allegations in the Complaint and the service of process, the undersigned finds that there is personal jurisdiction over all Defaulted Defendants. Federal Rule of Civil Procedure 4(k)(1)(A) provides that "serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located. . . ."

Here, M. Gachette was personally served with the summons and Complaint, and she also accepted service of the summons and Complaint for A2Z, LBS, and the Trust at the home she shared with W. Gachette on September 3, 2020. (Docs. 82–85.) Because W. Gachette was listed as the sole officer for A2Z and LBS, service was proper upon M. Gachette under Florida Statute § 48.031(1)(a). [6] M. Gachette's acceptance of the summons and Complaint was also proper pursuant to Federal Rule of Civil Procedure 4(e)(1) and Florida Statute § 48.031(1)(a).

In addition to adequate service of process, however, the party moving for default judgment must demonstrate that a court has jurisdiction over the parties. *See Nationwide Mut. Fire Ins. Co. v. Creation's Own Corp., S.C.*, No. 6:11-cv-1054-Orl-28, 2011 WL 6752561, at *2 (M.D. Fla. Nov. 16, 2011), *report and recommendation adopted*, 2011 WL 6752557 (M.D. Fla. Dec. 22, 2011) ("In addition to a showing of adequate service of process (or a showing sufficient to establish waiver of same), a Court must assure itself of jurisdiction over the action and the parties."). This

---

[6] Allowing for personal service upon an individual by delivering a copy of a summons and complaint to the person to be served or by leaving he copies at his or her usual place of abode with any person residing therein who is 15 years or older and informing the person of their contents. Fla. Stat. § 48.031(1)(a).

requires a showing that "a defendant is within the substantive reach of a forum's jurisdiction under applicable law." *Prewitt Enters., Inc. v. Org. of Petroleum Exp. Countries*, 353 F.3d 916, 925 n.15 (11th Cir. 2003).

In the Complaint, the United States alleges that the Trust is the creation solely of W. Gachette, a Florida resident, as trustee of the Trust. (Doc. 1 ¶¶ 4, 76.) The Complaint sets forth that Defendants A2Z and LBS are limited liability companies, that W. Gachette is the sole member of both, and that M. Gachette is also a resident of Florida.[7] (Docs. 1 ¶ 5; 95 at 2; 105 at 2.) W. Gachette is a resident of Florida and is the trustee of the Trust, manager for A2Z, and the president of LBS,[8] and M. Gachette is a resident of Florida. Therefore, the undersigned recommends finding that there is personal jurisdiction over the Defaulted Defendants.

**C. Venue**

Pursuant to 28 U.S.C. § 1391(b)(2), a civil action can be brought in a "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." It is evident that the events giving rise to this action, and the properties that are the subject of the action, are located in one of the counties served by the Orlando Division. W. Gachette resides at 9741 Portofino Drive, Orlando, Florida, within this District. (*Id.* ¶ 3.) In addition, the United States avers all the real property that is the subject of the lien and judgment enforcement portion of this action is located within this district. (*Id.*) As such, the undersigned recommends finding that venue is appropriate pursuant to 28 U.S.C. § 1391(b)(1) and (2).

---

[7] The United States also attached to its Motion for Clerk's Default a copy of the Florida Division of Corporations entity detail, which indicates A2Z has a principal and mailing address of 4250 Alafaya Trail, Oviedo, FL. (Doc. 95-1.)

[8] *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.,* 374 F.3d 1020, 1022 (11th Cir. 2004) (discussing that citizenship of an LLC is established by its members).

### D. Entitlement to Default Judgment and Damages

As an initial matter, assessments by the IRS are presumed to be correct. *United States v. Chila*, 871 F.2d 1015, 1018 (11th Cir. 1989). Where a party fails to appear or otherwise defend an action, it cannot overcome the presumptive validity of an IRS assessment. *United States v. Isagba*, No. 5:17-CV-93-Oc-TJC-PRL, 2017 WL 6543830, at *4 (M.D. Fla. Oct. 31, 2017), *report and recommendation adopted*, 2017 WL 6539049 (M.D. Fla. Dec. 21, 2017). Because none of the Defaulted Defendants appeared or otherwise defended this action, the Assessments and the subsequently resulting Tax Liens are presumed valid.

### 1.   The Trust

The United States presents two[9] separate theories on which the Trust's assets are wholly or partially subject to the Tax Liens. The United States avers that under Florida law, because the Trust is revocable, all the Tax Liens attach to any property it owns or controls. (Doc. 109 at 4.) The United States also argues that any of Tax Liens that were recorded prior to the Trust's creation remain attached to the Trust Properties. (*Id.*)

IRC § 7403 allows enforcement of tax liens and liabilities against "any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability." IRC § 7403(a). "The transfer of property subsequent to the attachment of the lien does not affect the lien"; therefore, a property continues to be burdened by a lien once it

---

[9] The Complaint contains a third argument, based on invalidity of the Trust because it named W. Gachette as both the Trustee and beneficiary (or alternatively, failed to name a beneficiary); however, it contains a typographical error referencing Florida Statute § 436.0404, which states in its entirety that "[a] trust may be created only to the extent the purposes of the trust are lawful, not contrary to public policy, and possible to achieve." (Doc. 1, ¶ 76) (citing Fla. Stat. § 736.0404). Although it appears the United States meant to reference Section 436.0402(c) and (e), which address validity issues where the beneficiary of the Trust is also the Trustee, the United States does not make this argument in the Motion and it will not be discussed further here.

attaches to the property. *United States v. Bess,* 357 U.S. 51, 57 (1958)). Florida Statue § 736.0505(1)(a) states that "[t]he property of a revocable trust is subject to the claims of the settlor's creditors during the settlor's lifetime to the extent the property would not otherwise be exempt by law if owned directly by the settlor." Fla. Stat. § 736.0505(1)(a).

Here, the United States's allegations, taken as true, establish that W. Gachette created the Trust as a revokable trust in August 2018. (Doc. 1 ¶¶ 74, 77.) The Trust acquired the Trust Properties from W. Gachette after they were already subject to a majority of the pre-2018 recorded Tax Liens against W. Gachette, which totaled over $1,827,478.41. (*Id.* ¶¶ 73, 75.) The undersigned agrees with the United States that because W. Gachette is the settlor of the Trust, under Florida Statute § 736.0505(1)(a), the assets of the Trust are subject to the United States's claims against W. Gachette, regardless of when the Trust Properties were transferred to the Trust. (Doc. 109 at 5 (citing Fla. Stat. § 736.0505(1)(a); IRC §§ 6321, 6322 and 7403; *Bess*, 357 U.S. at 57).)

The Trust has constructively admitted the allegations of the Complaint, and the undersigned recommends granting judgment in favor of the United States and against the Trust, and decreeing that the properties titled to the Trust are subject to the Tax Liens against W. Gachette, which may be enforced through a IRC § 7403 action.

**2.     A2Z and LBS**

The United States's claims against the A2Z and LBS Properties are based on allegations that A2Z and LBS are nominal owners of the A2Z and LBS Properties, or are W. Gachette's alter ego, rendering W. Gachette their true beneficial owner. (Doc. 109 at 5–6.) The United States contends that "property in the hands of a delinquent taxpayer's nominee or alter ego is subject to the federal tax liens against the taxpayer's property and rights to property," and therefore render the A2Z and LBS Properties subject to the Tax Liens. (*Id.* at 6.)

Property in the hands of a delinquent taxpayer's nominee or alter ego is subject to the federal tax liens against the taxpayer's property and rights to property. *See G.M. Leasing v. United States*, 429 U.S. 338, 351 (1977) (explaining that, "[i]f petitioner was [the delinquent taxpayer's] alter ego," it would "then follow that the Service could properly regard petitioner's assets as [the delinquent taxpayer's] property subject to the lien under IRC § 6321, and the Service would be empowered, under IRC § 6331, to levy upon assets held in petitioner's name in satisfaction of [the delinquent taxpayer's] income tax liability.") (citing *Griffiths v. Comm'r*, 308 U.S. 355 (1939), and *Higgins v. Smith*, 308 U.S. 473, 476 (1940)). "'Property' and 'rights to property' for the purposes of 26 U.S.C. § 6321 include 'not only the property and rights to property owned by the delinquent taxpayer, but also property held by a third party if it is determined that the third party is holding the property as a nominee ... of the delinquent taxpayer.'" *May v. United States*, 2007 WL 3287513 at *1 (11th Cir. 2007) (*quoting Spotts v. United States,* 429 F.3d 248, 251 (6th Cir. 2005)).

A nominee owner "is one who holds bare legal title to property for the benefit of another." *May*, 2007 WL 3287513, at *1 (quoting *Scoville v. United States*, 250 F.3d 1198, 1202 (8th Cir. 2001)). Under federal common law, the factors in considering whether a corporation is an individual defendant's nominee are: (1) the control the individual defendant exercises over the nominee and its assets; (2) the use of corporate funds to pay the individual defendant's personal expenses; and (3) the family relationship, if any, between the individual defendant and the corporate officers. *Shades Ridge Holding Co., Inc. v. United States,* 888 F.3d 725, 729 (11th Cir. 1989); *see also United States v. Wilkins*, 2015 WL 4571304 at *7 (M.D. Fla. 2015). These factors are not applied rigidly; the most important consideration is who has active or substantial control over the property. *In re Steffen*, No. 8:13-cv-1700-T-27, 2014 WL 11428827 at *4 (M.D. Fla.

2014). An alter-ego relationship exists under Florida law when the following factors are satisfied: (1) a lack of separateness between the corporation and its shareholder(s); (2) improper conduct in the use of the corporation by the shareholder(s); and (3) the improper conduct was the proximate cause of the alleged loss. *See Solomon v. Betras Plastics, Inc.*, 550 So. 2d 1182, 1184-85 (Fla. 5 DCA 1989). Reverse piercing of the corporate veil has been found to be "particularly appropriate to apply the alter ego doctrine . . . when the controlling party uses the controlled entity to hide assets . . . to avoid the preexisting liability of the controlling party." *Braswell v. Ryan Investments, Ltd.*, 898 So. 2d 38 (Fla. 3d DCA 2008) (quoting *Select Creations, Inc. v. Paliafito Am., Inc.*, 852 F. Supp. 740, 744 (E.D. Wis. 1994)).

The "nominal owner" and "alter-ego" determinations are, legal conclusions; however, in this case, the Complaint contains sufficient factual allegations to support them. The United States alleges that W. Gachette used the profits from his fraudulent return preparation businesses to buy, rehabilitate, rent, and sell residential rental properties, and that he acquired properties and placed title in the name of either A2Z or LBS. (Doc. 1 ¶¶ 30–36.) The United States further alleges that W. Gachette: created A2Z and LBS; is the sole owner of LBS; formerly owned 100% of A2Z before transferring the membership interest to the Trust after the recordation of the Tax Liens; is the sole manager of A2Z; is the sole officer of LBS; maintains exclusive control over both companies including its records and bank accounts; and uses the funds in those accounts for business and personal expenditures at will and without regard to which entity nominally owns the bank account. (Doc. 1 ¶¶ 84–90.)

The allegations of the Complaint, taken as true, are sufficient to establish that A2Z and LBS are nominal owners of the A2Z and LBS Properties and W. Gachette is the true beneficial owner. The allegations of the Complaint taken as true are also sufficient to establish that A2Z and

LBS are W. Gachette's alter egos, the A2Z and LBS Properties are subject to the Tax Liens against W. Gachette, and those liens may be enforced through a § 7403 action. Because A2Z and LBS failed to answer the Complaint, they have constructively admitted its allegations against them.

The undersigned recommends granting judgment in favor of the United States and against the A2Z and LBS, and decreeing that the properties titled to the A2Z and LBS are subject to the Tax Liens against W. Gachette, which may be enforced through an IRC § 7403 action.

### 3. M. Gachette

The United States argues that under Florida law, the result of W. Gachette's providing the funds to M. Gachette to purchase the M. Gachette Properties is a trust upon those properties such that W. Gachette is considered their beneficial owner. (Doc. 109 at 11 (citing *Towerhouse Condo. Inc., v. Millman*, 475 So. 2d 674, 677 (Fla. 1985) ("As a matter of law, where property is acquired in the name of one person or entity with consideration provided by others, the transferee is presumed to hold title on a resulting trust for those who provided the consideration.")).) The United States further argues that the M. Gachette Properties are proceeds of the fraudulent transfer of funds; therefore, they are subject to levy for W. Gachette's indebtedness to the United States. (*Id.* (citing Fla. Stat. § 726.108(2)).)[10]

The United States alleges in the Complaint that W. Gachette provided the funds to purchase the M. Gachette Properties. (Doc. 1 ¶¶ 95, 97.) The Complaint contains further allegations that W. Gachette acted with actual intent to hinder, delay, or defraud the United States by transferring the funds to M. Gachette in May and November of 2015 to purchase the M. Gachette Properties—after W. Gachette had already become indebted to the United States for taxes and after the

---

[10] Granting creditors the remedy of levying execution on a transferred asset or its proceeds if it has obtained a judgment against the debtor for fraudulent transfer. Fla. Stat. § 726.108(2).

commencement of the injunction suit against him that resulted in the Disgorgement Judgment. (Doc. 1 ¶¶ 98-99.)

I find that the Complaint sets forth adequate allegations to establish that W. Gachette is the beneficial owner of the M. Gachette Properties, and that the M. Gachette Properties are the proceeds of transfers intended to defraud the United States. Because M. Gachette failed to answer, she is deemed to have admitted the allegations of the Complaint, and a default judgment should be entered against her.

The undersigned recommends granting judgment in favor of the United States and against M. Gachette, and decreeing that the properties titled to M. Gachette are subject to the Tax Liens against W. Gachette, which may be enforced through an IRC § 7403 action.

## IV.  RECOMMEDATION

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the Court:

1. **GRANT** the Motion in part. (Doc. 109.)
2. **FIND** that the United States is entitled to default judgment against Walner G. Gachette as Trustee of the Walner G. Gachette Living Trust, A2Z Rentals, LLC, LBS Home Loan, Inc., and Maria Gachette.
3. **ENTER** an order decreeing that the properties titled to the Walner G. Gachette Living Trust, A2Z Rentals, LLC, LBS Home Loan, Inc., and Maria Gachette are subject to the Tax Liens against W. Gachette, which may be enforced through an IRC § 7403 action.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on May 20, 2021.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Parties